MARTÍN ANTONIO SABELLI - SBN 164772
Law Offices of MARTÍN SABELLI
740 Noe Street
San Francisco, CA 94114-2923
(415) 298-8435
msabelli@sabellilaw.com

JOHN T. PHILIPSBORN - SBN 83944
Law Offices of JOHN T. PHILIPSBORN
507 Polk Street, Suite 350
San Francisco, CA 94102
(415) 771-3801
jphilipsbo@aol.com

Attorneys for BRIAN WAYNE WENDT

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JONATHAN JOSEPH NELSON, et al.,<br><br>    Defendants. | Case No. CR-17-00533-EMC<br><br>**REPLY TO GOVERNMENT RESPONSE TO MOTION FOR DISCLOSURE OF BASES FOR EACH EXPERT OPINION (DOCS 879, 881, 887) RE ENTERPRISE EXPERTS**<br><br>**Date: December 19, 2019**<br>**Time: 11:30am**<br>**Dept: The Honorable Laurel Beeler** |

## I. INTRODUCTION

The Government responds to Mr. Wendt's Motion (Docs 879, 881) by making two points.[1] First, the Government argues that the proffered "enterprise" opinions are within the scope of opinions have been permitted in gang RICO cases in this District. Second, the Government argues that providing a CV for each of its two "enterprise" experts

---

[1] The Government's response mistakenly attributes the instant Motion to Jonathan Nelson.

**REPLY TO GOVERNMENT RESPONSE TO MOTION FOR DISCLOSURE OF BASES FOR EACH EXPERT OPINION (DOCS 879, 881, 887) RE ENTERPRISE EXPERTS**     1

satisfies Rule 16(a)(1)(G) because "there is *no methodology* for experts whose opinions are based on specialized training and experience, as opposed to experts who apply scientific principles and reach an opinion through them." Docket 887 at 3-4 (emphasis supplied). The Government is mistaken in both respects.

The Court, however, need not yet address the first issue because the current Wendt motion is specifically focused on the second issue: the adequacy of the Government's "enterprise" expert disclosures under Rule 16(a)(1)(G). The first issue cannot be addressed until the Government has fulfilled its Rule 16 duties by disclosing the bases and methodology for each opinion; until the Government has done so, Mr. Wendt cannot challenge, and this Court cannot assess as mandated by FRE 702, the reliability of the proffered opinions.

The need for adequate Rule 16(a)(1)(G) disclosures is not an academic issue for three fundamental reasons. First, Mr. Wendt wishes to avoid a prolonged evidentiary during which he is compelled to essentially seek discovery of the bases and methodology for each opinion during cross examination with the goal of obtaining during a hearing intended to address <u>admissibility</u> the discovery to which he is entitled. Second, as argued below, the matter of adequate law enforcement expert disclosures has been decided by several Courts, including by Judges in <u>this</u> District. Third, the *Daubert* litigation is of particular importance *in this case* given the scope of the proffered opinions which as proposed combine 'proof' and argument of the existence of the charged Hells Angels Sonoma Charter RICO conspiracy as well as an uncharged national and international Hells Angels RICO conspiracy.[2]

---

[2] As discussed in the Motion (Docket 879), Mr. Austin's proffered testimony *alone* would prove up the *charged* Sonoma (HASC) conspiracy and Mr. Scheetz's proffered testimony *alone* would prove up an *unalleged* national and international RICO conspiracy. Mr. Wendt notes that the proffered opinions in this case appear to be broader than those proffered in *Cerna* which the Government cites to suggest that this Court should put aside concerns regarding the nature and scope of the proffered opinions. Notably, in *Cerna* the Court held a five day hearing as a result of the Government's

**REPLY TO GOVERNMENT RESPONSE TO MOTION FOR DISCLOSURE OF BASES FOR EACH EXPERT OPINION (DOCS 879, 881, 887) RE ENTERPRISE EXPERTS** 2

1    The defense motion should be granted.

**II.    ARGUMENT AND AUTHORITIES**

   **A.    The Government's Response Does Not Address the Adequacy of its
          Disclosures, Rather it Asks the Court to View its Disclosures as
          Adequate Based on the Argument That the Proffered Opinions Should
          Be Admissible – Which Is Not the Task at Hand.**

In its motion (Doc 879), the defense detailed efforts by the parties aimed at attempting to resolve disputes concerning the adequacy of the Government's enterprise expert disclosures. (Doc 879, at p.4, including fn.3 referencing the supporting exhibits, which include the Government's disclosures letters.) The defense has argued that the Government's 'enterprise exert' disclosures do not satisfy requirements put in place either by the Ninth Circuit or by other District Courts, including orders from this Court's colleagues in similar cases. Moreover, the disclosures do not comply with the requirement set forth in FRCP 16(a)(1)(G) that any summary of opinions provided "...must describe the witness's opinions, **the bases and reasons for those opinions, and the witness's qualifications**." (Emphasis supplied.)

In making the above conclusory statements, the defense agrees that the Government

---

failure to disclose bases and methodologies. See Docket 2781, at page 10, et seq. Moreover, in a pretrial order in that case, Judge Alsup offered the following views regarding the Government's intention to conduct a trial by opinion:

> The Court has read the government's disclosures for three "experts," Officers Dion McDonnell, Frank Flores and Mario Molina, and doubts that any of the proposed testimony will be admissible except possibly for testimony regarding MS-13 tattoos, symbols, codes, colors and graffiti and their meaning. The existence of the gang and its organization are key RICO proof elements. *They should be proven by first-hand testimony, presumably by former members, not by opinions from the police.* If experts were allowed for the government, they would have to be allowed for the defense, so this needs to be sorted out soon. The government shall show cause why these three "experts" should not be stricken as to all opinion testimony.

*United States v. Cerna*, 08-CR-730, Docket 1721 (emphasis supplied).

**REPLY TO GOVERNMENT RESPONSE TO MOTION FOR DISCLOSURE OF BASES FOR EACH EXPERT OPINION (DOCS 879, 881, 887) RE ENTERPRISE EXPERTS**   3

has provided CVs for its two experts and has provided statements of proposed opinions. What is missing is a disclosure sufficient to permit the defense to frame and raise objections to what amounts to experience-based technical expert opinion testimony which is properly reviewed, as pointed out by the Ninth Circuit in addressing law enforcement expert opinions in *U.S. v. Hermanek*, 289 F.3d 1076, 1092-93 (9th Cir., 2002), as an analysis that occurs under *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999), and "...entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is ... valid and of whether that reasoning or methodology properly can be applied to the facts in issue."

In *Hermanek*, the Ninth Circuit clearly had *Kumho Tire* and the need for the District Court to conduct gatekeeping assessments of the admissibility of expert evidence at hand when it explained what was missing in the discussion of how a law enforcement expert's background and experience was linked to specific opinions that the Government was seeking to introduce:

> Broderick's qualification on the stand also did not establish that his interpretations of new words and phrases were supportable by reliable methods. The government offered only Broderick's general qualification – his extensive experience and knowledge of drug terminology based on several years investigating the cocaine trade in the Bay Area and interpreting hundreds of intercepted communications. These qualifications are relevant, but standing alone, they neither explain nor establish the reliability of Broderick's interpretations of new words and phrases. [...] As a prerequisite to making the Rule 702 determination that an expert's methods are reliable, the court must assure that the methods are adequately explained.

*Id.*, at 1092-93. The *Hermanek* court also cited *Claar v. Burlingame N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir., 1994), in explaining that where a proposed expert's disclosures are devoid of explanation for the "'reasoning and methods underlying their conclusions,'" the District Court could not make findings required by Rule 702. *Id.*, at 1093.

This state of affairs should hardly be surprising to the Government since in this District, with few exceptions, the point of departure for the analysis of the adequacy of law enforcement 'gang expert' – here 'enterprise expert' – disclosures under Rule 16(a)(1)(G)

**REPLY TO GOVERNMENT RESPONSE TO MOTION FOR DISCLOSURE OF BASES FOR EACH EXPERT OPINION (DOCS 879, 881, 887) RE ENTERPRISE EXPERTS**     4

is Judge Alsup's June 8, 2010 ruling in *U.S. v. Cerna*, 2010 U.S.Dist. LEXIS 62907; 2010 WL 2347406 (N.D.Cal, June 8, 2010). *Cerna* was a case in which the Government also sought to present the testimony of two law enforcement officers addressing enterprise-related issues (among others). Judge Alsup began his analysis of the adequacy of the Government's disclosures by focusing specifically on the text of Rule 16(a)(1)(G) and the Advisory Committee Note of the 1993 Amendment that "...the bases and reasons [disclosed] must be sufficient to allow counsel to frame a *Daubert* motion (or other motion *in limine*), to prepare for cross-examination, and to allow a possible counter-expert to meet the purport of the case-in-chief testimony." 2010 U.S.Dist. LEXIS 62907, at p.6.

Significantly, in *Cerna*, and indeed in almost all of the cases that have been litigated in this District over the past 20 years in which enterprise or gang experts were sought to be admitted, the law enforcement witness opinions were confined to enterprises that occupied a more confined territory than the Hells Angels Motorcycle Club (hereafter "HAMC"); the opinions were more specific to a particular time period (here the Government is purporting to cover matters around World War Two and thereafter) and often to particular classes or types of alleged enterprise vocabulary or code, symbols, and signs. In *Cerna*, the Government had initially indicated an ambition for one of its experts to testify about the San Francisco clique of the MS-13, and to testify about connections with other cliques outside the Bay Area. *Id.*, at 17. Part of the problem was the lack of disclosure of "...bases and reasons." *Id.*, at 17.

In his ruling on the adequacy of the *Cerna* disclosures, Judge Alsup provided a strong cautionary note indicating that he intended to follow the lead of other courts in curtailing the presentation of opinions that in his view offered "...shortcut proof for key elements for crime like racketeering and organizational structures..." because of the problems with having case-related investigators serve as surrogates for Government counsel in synthesizing the Governments case; compounded with the problem of having mixed fact and opinion witnesses where law enforcement officers were investigating the very enterprise that is being prosecuted; and where the opinions sought to be elicited are

such that the proposed experts are "'instructing the jury on the existence of the facts needed to satisfy the elements of the charged offense." *Cerna*, at p.20, quoting from *U.S. v. Mejia*, 545 F.3d 179, 191 (2d Cir., 2008).

Having explained that some law enforcement expert opinions would likely be admissible – such as the explanation of "...[of] specific coded words and phrase used by drug dealers..." – but that other matters such as opinions on "structure, organization, and operations of the...gang..." would not, Judge Alsup then explained that it would be necessary to set forth Rule 16 disclosures in a format that allowed an understanding of how a given stated opinion was arrived at – a statement of basis and methodology. *Cerna*, at 26. Where an officer would be offered to explain, for example, given vocabulary found in a particular recording, a necessary statement of basis and methodology would be:

> The basis for this opinion is his experience in monitoring drug transactions and in listening to 1,600 recordings involving the same individuals between 2004 to 2009, many of which used the same terms the same way.

*Id.*, at 26. Judge Alsup required that each of the opinions and each of the bases "...must be stated with at least this much particularity." *Id.*, at 29-30.

Admittedly, in considering the adequacy of expert disclosures in this case, the District Court may not want to issue rulings that bleed into addressing the admissibility of the opinions under F.R.E. 702. On the other hand, the rulings from other Judges in this District have, to varying degrees, described the appropriate scope of pertinent experience-based law enforcement expert opinion testimony in view of existing case law and have discussed these matters in conjunction with a discussion of the adequacy of expert disclosures. As the defense has already pointed out, in addition to Judge Alsup, other Judges in this District have waded into the adequacy of disclosures while also addressing concerns about the scope of the Government's proposed expert opinions. See, for example, Judge Orrick's Order in *U.S. v. Williams*, 2016 U.S.Dist. LEXIS 30318 (N.D.Cal, March 9, 2016), noting the skepticism in this District for the admission of synthesizing 'gang' experts, and noting the reasoning for adhering to the concern that

expert opinion testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir., 2010), *relied on in Williams, supra*.

The Government emphasizes that its experts will focus on symbols, terms, and territory. True, as evidenced in its October 25, 2019 disclosure letter (Doc 879-2), these words appear as head notes in the disclosure letter. But the opinions proffered stray well beyond those bounds – and none of the disclosures offers descriptions of bases methodology, beginning with opinion number one: "HASC has a set of common symbols, frequently displayed on a vest or jacket referred to as a 'cut.'" This is a statement of opinion. How is it arrived at: surveillance; interviews of members; review of documents; review of testimony; debriefings? Where? When?

If the Court reviews this October 25th disclosure, it will see that essentially none of the opinions stated are provided with bases and methodology. Moreover, the disclosure is punctuated with dispersive opinions like: "Individuals found in possession of ... hammers could claim that it is simply a tool used for motorcycle maintenance, but it is really used as a weapon." (From end of ¶ 6, Notice of Brandon Austin.) This is not 'symbols, terms, territory.' This is conjecture, and speculation on intent in violation of FRE 704(b).

There are then even wider ranging general opinions like: "Any actual or perceived disrespect to the cut or the HASC symbols on it are expected to be met with violence. Violence to address disrespect or perceived disrespect to HASC, the Hells Angels, or their symbols is celebrated by members." (From Austin disclosure, at ¶ 10 in its entirety.) No basis is provided; the methodology is also not provided; and the preview of the explanation of how this type of synthesizing argument would be admissible under F.R.E. 702, 703, and would not violate 704(b), is not provided either. There is no source of information described; there is no length of observation explained; there is no explanation of whether the information was received through multiple source points and/or was discussed with other officers, etc.

The Ninth Circuit's *en banc* ruling in *U.S. v. W.R. Grace, et al.*, 526 F.3d 499 (9th

Cir., 2008)(*en banc*) specifically discusses the District Court's ability to enter discovery orders pertinent to experts to help manage a litigation. *Id.*, at 510-11. The Court made it clear that Rule 16(a)(1)(G) requires "the government to disclose, at the defendant's request, a summary of any expert witness testimony the Government intends to use during its case-in-chief at trial as well as 'the bases and reasons for those opinions,' documents within the government's possession, custody, or control that the government intends to use...." *Id.*, at 512. Note that pertinent here is the observation in *Grace*, the District Court had "clarified that expert disclosures must identify the documents or information that the expert reviewed...." *Ibid.* And it is this category of disclosure, informally sought by the defense already, that the Government has failed to provide in this case.

> **B.  Recognizing That Rule 16 Expert Disclosures Must Be Sufficient to Allow Counsel to Make a *Daubert* Motion, the Court Should Rely in Part on the Analysis of Law Enforcement Expert Opinions to Gauge the Relative Adequacy (Or Inadequacy) of the Disclosures Offered Here.**

The defense has previously acknowledged that there is case law that links law enforcement officer or agent opinions rooted in "training and experience" and admissible testimony. But the fact that the Government is offering opinions based on "training and experience" does not exempt the Government from compliance with Rule 16(a)(1)(G) and the above-described interpreting law. Indeed, part of the reason that the Supreme Court decided *Kumho Tire Co. v. Carmichael, supra*, 526 U.S. 137, as it did was to acknowledge that not all experts will have a background or training in science and academia. However, as stated by the Ninth Circuit in *U.S. v. Hankey*, 203 F.3d 1160 (9th Cir., 2000), where a law enforcement officer is testifying, the District Court still must be "...diligent in assessing relevance and reliability" of testimony based on "other specialized knowledge" criteria. *Id.*, at 1169. Here, the Government argues that *Hankey* essentially allows a type of "Rule 16 lite" when it comes to law enforcement experts and the need for compliance with Rule 16(a)(1)(G). Not so.

As explained above, in *Hermanek*, *supra*, which was decided after *Hankey*, *supra*, the Ninth Circuit was attentive to the need for law enforcement experts to be held to the

requirement that they must provide explanation for the "'reasoning and methods underlying their conclusions.'" Otherwise, the District Court could not undertake a Rule 702 analysis. *Id.*, at 1093.

In *U.S. v. Gomez*, 725 F.3d 1121 (9th Cir., 2013), the court upheld certain opinions expressed by a law enforcement officer in view of arguments on appeal that the opinions should have been excluded. In doing so, the court considered arguments objecting to the Special Agent's reliance on information that he learned through informants and testimonial hearsay that was fairly specific and confined. The court acknowledged that there are clearly problems of various kinds, including Confrontation Clause issues that arise where the Government seeks to use a law enforcement officer as a synthesizing witness, and the *Gomez* court cited the defense challenge brought under *Crawford v. Washington*, 541 U.S. 36 (2004), as one that required some discussion. *Gomez, supra*, at 1128. *Gomez* ruled that he law enforcement expert had not provided evidence in violation of *Crawford*.

The *Gomez* court further relied on observations that have been made in several Circuits, including by the Second Circuit in the above-cited *United States v. Mejia*, *supra*, 545 F.3d 179, about law enforcement expert testimony that merely summarizes case-related information rather than provides reasoning for opinions. *Gomez, supra*, independently cited *U.S. v. Johnson*, 587 F.3d 625 (4th Cir., 2009) as yet another case in which a Circuit Court expressed concerns about law enforcement officer opinion can merely serve as a conduit for hearsay as opposed to providing illuminating analysis – quoting in pertinent part from the following language in *Johnson*:

> The question is whether the expert is, in essence, giving an independent judgment or merely acting as a transmitter for testimonial hearsay. As long as he is applying his training and experience to the sources before him and reaching an independent judgment, there will typically be no *Crawford* problem. The expert's opinion will be an original product that can be tested through cross-examination.

*Id.*, at 635.

Just as do the Judges in this Court, the Judges on the Ninth Circuit continue to

**REPLY TO GOVERNMENT RESPONSE TO MOTION FOR DISCLOSURE OF BASES FOR EACH EXPERT OPINION (DOCS 879, 881, 887) RE ENTERPRISE EXPERTS**  9

decide the admissibility of 'enterprise' and 'gang' expert testimony filtered through law enforcement officers – and while the Ninth Circuit's decisions focus on whether a given opinion was correctly admitted at trial, the rulings clearly communicate the concerns that the Ninth Circuit has had about the issues presented when a law enforcement officer is called to testify as an expert.

In *U.S. v. Vera*, 770 F.3d 1232 (9th Cir., 2014) – one of two published opinions in the same case – the court reviewed the admissibility of the testimony of two law enforcement officers, reiterating that since part of the predicate for law enforcement opinions tends to be testimonial statements of witnesses, District Courts must ensure that as specified in *Gomez, supra*, 725 F.3d at 1129, the expert is shown to be applying "'...his training and experience to the sources before him and reach[es] an independent judgment.'" *Vera,* 770 F.3d, at 1238, *relying on Gomez,* 725 F.3d, at 1129. The *Vera* court reiterated the cautionary note that District Courts must avoid the expert who is "'used as little more than a conduit or transmitter for testimonial hearsay, rather than as a true expert whose considered opinion sheds light on some specialized factual situation.'" *Vera*, 770 F.3d, at 1237-38, *relying on both Gomez, supra, and U.S. v. Johnson, supra*, 587 F.3d 625, 635. Pertinent to the issues presented here – since we are addressing the adequacy of expert disclosures – is a showing of whether the opinion was developed by applying the experience stated and a reliable methodology. *Vera,* 770 F.3d, at 1238-39.

The court in *Vera* contrasted some of the testimony that was presented in that case with the problematic testimony that had been described by the Second Circuit in the above-cited *U.S. v. Mejia, supra*, 545 F.3d 179. The *Vera* court emphasized the difference between one of the experts that it approved of, who had testified both as an expert and a percipient witness, and a law enforcement expert who is a 'mere conduit.' The court explained that Detective Franks, whose testimony it approved of on appeal, had detailed the various assignments that he had had over time in which he received training on the case specific gang. He had also made contact with members of that gang while on patrol, while assigned to work in the jail, and while he was actually conducting investigations of

the gang at issue. Further he reviewed wire taps pertinent to the gang, and described, based on a specific analysis, how he had arrived at certain determinations about certain individuals in the gang. *Id.*, at 1239-40.

The *Vera* court ontrasted its analysis of the admissibility of the Franks testimony with its concerns about the admission of a second law enforcement officer expert called to provide 'interpretation' of phone calls. While acknowledging that case law supports the notion that an Agent with an adequate foundation can testify about 'street language,' the court further explained that "...Rule 702 requires District Courts to assure that an expert's *methods* for interpreting the new terminology are both reliable and adequately explained." *Id.*, at 1242, *relying on U.S. v. Hermanek, supra*, 289 F.3d, at 1093 [emphasis in original]. "For example, an agent may permissibly apply his knowledge of the drug manufacturing process to interpret words referring to that process or apply his familiarity with a particular method for generating code words to decode their meaning." *Vera,* 770 F.3d, at 1242-43.

As to the second of the *Vera* experts, the Ninth Circuit first cautioned that because the second expert was testifying both as an expert and as a fact witness, the District Court had not set clear lines of demarcation. Also, it had not guarded against opinions based on speculation or on hearsay. *Id.*, at 1243-44.

In concluding its analysis of the admission of the testimony of the second expert and the District Court's failure to have properly analyzed the issue, the *Vera* court explained that the defects it identified "...led to specific flaws in Lavis's testimony, mostly relating to the reliability of his methodology, which affected several of his opinions regarding specific *drug quantities*." *Id.*, at 1244-45 [emphasis in original].

**C.     The Room for Error, Given the State of the Law, Is Seen From the Content of the Disclosures Currently Before the Court.**

The expert disclosure concerning the proposed expert on the Sonoma County chapter of the Hells Angels clearly explains (see Docket 879-2, Brandon Austin disclosure) that Mr. Austin's "...testimony will be based on the training and experience detailed in his CV which is attached. Officer Austin's testimony will be based on

discussions with other investigators, review of the results of those investigations, including communications among Hells Angels. It will be based on what he learned through his participation in the execution of at least six warrants on residences of Hells Angels members and two Hells Angels clubhouses. ... It will be based on his interactions with Hells Angels members, prospects, hang arounds, and associates, including embers of motorcycle clubs that are connected to HASC...." (Austin disclosure, Doc 879-2, at page 1.)

What this explains to the reader is that Officer Austin is a hybrid participant in this trial – he is a fact witness who has obtained information about this case through his participation in investigating some of the people and events involved, and he is a conduit for information that he has received from other individuals. The disclosure does not, using the above case law references as guides, provide a statement or description of a methodology for expressing opinions that meets with the approval of the copious and pertinent case law on the approved contours of law enforcement officer experience-based opinion testimony.

There is no connection of the dots between Mr. Austin's professional position and opinions that he expresses in the sense of explaining what it is about his experience and training that assists him in developing specifically stated opinions. In other words, there is no disclosure of the information critical to the bringing of objections under F.R.E. 702, *Kumho Tire*, and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Opinion number 10 of the October 25 disclosure (Doc 879-2) reads in disclosure 10: "Any actual or perceived disrespect to the cut or the HASC symbols on it is expected to be met with violence. Violence to address disrespect or perceived disrespect to HASC, the Hells Angels, or their symbols is celebrated by members." What is the basis for this opinion ? How was it arrived at ? Since Deputy Austin is said to have focused his attention on Sonoma County before moving to Idaho, is his information specific to Sonoma County or is there a basis on which he is stating more general opinions ?

The same deficiencies, regrettably, can be seen in the disclosures concerning

Federal Officer Jeremy Scheetz, whose CV describes his various positions and his communications "...with law enforcement assets from across the globe concerning "OMGs," OMG expansion, OMG violence, and ongoing investigations pertinent to OMGs...." (Docket 879-6.)  His CV makes it clear that he does not focus only on the Hells Angels and that he is a clearing house for information and analyzes "...thousands of pieces of intelligence as it pertains to the investigation, particularly OMG membership, hierarchy, structure, day-to-day operations, church minutes, officers' minutes, and/or the OMG...." (From Docket 879-6, at p.4.)

Not only is there a complete failure to explain how specific opinions that Mr. Scheetz develops are subject to an identifiable methodology, but also, and particularly in view of the above-cited cautionary case law, there is no indication of how Mr. Scheetz serves as anything but a "conduit for hearsay" and as a synthesizer and conveyor of repackaged information that allows him to serve as a surrogate to argue the Government's case as opposed to providing case-specific opinions that he has arrived at through specific, identifiable activities that fall within the heartland of developing experience-based opinions.

## **CONCLUSION**

In sum, the Government has provided what information it wants the Court to admit through two law enforcement resources, one now employed in Boise, Idaho, and the other employed by the Federal government.  The Government has not provided information of the type that is required under Rule 16(a)(1)(G), and the Government has failed to heed the instructions that have been provided by rulings from the Ninth Circuit and from District Courts that have framed what adequate disclosures consist of.

The Court should order the Government to comply with the Rule 16, or forfeit the ability to call either of its proposed law enforcement experts as experts.

**REPLY TO GOVERNMENT RESPONSE TO MOTION FOR DISCLOSURE OF BASES FOR EACH EXPERT OPINION (DOCS 879, 881, 887) RE ENTERPRISE EXPERTS**       13

Dated: December 9, 2019         Respectfully Submitted,
                                MARTIN ANTONIO SABELLI
                                JOHN T. PHILIPSBORN


                                 */s/ John T. Philipsborn*
                                JOHN T. PHILIPSBORN
                                Attorneys for Brian Wayne Wendt

# **PROOF OF SERVICE**

I, Melissa Stern, declare:

That I am over the age of 18, employed in the County of San Francisco, California, and not a party to the within action; my business address is Suite 350, 507 Polk Street, San Francisco, California 94102.

On today's date, I served the within document entitled:

**REPLY TO GOVERNMENT RESPONSE TO MOTION FOR DISCLOSURE OF BASES FOR EACH EXPERT OPINION (DOCS 879, 881, 887) RE ENTERPRISE EXPERTS**

( ) By placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at San Francisco, CA, addressed as set forth below;

(X) By electronically transmitting a true copy thereof;

( ) By having a messenger personally deliver a true copy thereof to the person and/or office of the person at the address set forth below.

Kevin Barry, Assistant U.S. Attorney

All defense counsel through ECF

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this December 9, 2019, at San Francisco, California.

Signed:     */s/ Melissa Stern*
                 Melissa Stern