MARTIN ANTONIO SABELLI - SBN 164772
Law Offices of MARTIN SABELLI
740 Noe Street
San Francisco, CA 94114-2923
(415) 298-8435
msabelli@sabellilaw.com

JOHN T. PHILIPSBORN - SBN 83944
Law Offices of JOHN T. PHILIPSBORN
507 Polk Street, Suite 350
San Francisco, CA 94102
(415) 771-3801
jphilipsbo@aol.com

Attorneys for BRIAN WAYNE WENDT

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JONATHAN JOSEPH NELSON, et al.,<br><br>Defendants. | **Case No. CR-17-00533-EMC**<br><br>**BRIAN WENDT'S STATUS MEMORANDUM FOR MARCH 9, 2020 HEARING**<br><br>**Date: March 9, 2020**<br>**Time: 10:30AM**<br>**Dept: The Honorable Edward M. Chen** |

BRIAN WENDT, through counsel, advises the Court of the following developments since the last calling of the case on February 7, 2020:

I. <u>Law Enforcement "Enterprise" Expert Disclosures</u>

At the last calling of the case and at the request of Mr. Wendt, the Court directed the government to identify the bases for each proffered opinion on an opinion-by-opinion basis for both proposed government law enforcement experts (Austin and Scheetz). The Court did so in order to develop the record in advance of the *Daubert* hearing scheduled to begin on April 1, 2020 and, specifically, to minimize the potential for (late) disclosure of methodologies or bases during direct or cross examination of the proffered law enforcement experts. In this regard, both the District Court and the Magistrate Court have, in the context of related litigation over the last

six months, articulated the need for expert disclosures consistent with Rule 16 and the Court's duty to assess the reliability of each of the numerous and far-reaching proffered expert opinions.

> A. <u>The Government Has Not Fully Complied With this Court's Order to Disclose Bases and Methodology on an Opinion-by-Opinion Basis.</u>

On February 21, 2020, the government provided revised disclosure letters for both experts which include footnotes following some but not all the opinions.[1] The footnotes appear to reference bases for the opinions to which they are appended and appear to follow a formula which, in many cases, begins with a carefully-worded but vague invocation to "experience investigating the HAMC, conversations with undercover officers, informants, and current and former members of the HAMC, and [the expert's] review of literature produced by and about the HAMC."

Unfortunately, the cited invocation is too vague to assist the Court in its gate-keeping function or the defense in its preparation for the *Daubert* hearing. In addition, many opinions lack footnotes and, moreover, it is clear from the face of the footnotes that basic information is lacking or is referenced in an extremely vague manner which does not convey useful information to the Court or to the defense. For these reasons, Mr. Wendt submits that the footnotes do not fully comply with this Court's Order and, therefore, as previously argued, this Court will be asked, in the context of the *Daubert* hearing, to exclude opinions based on lack of disclosure in addition to exclusion on other grounds.[2]

> B. <u>An Expert's Methods and Bases Must Be "Adequately Explained."</u>

The inadequacy of the most recent "enterprise" expert disclosures can be understood by reviewing the government's revised disclosures (attached hereto) and pertinent law. In this regard, the Ninth Circuit has observed that: "As a prerequisite to making the Rule 702 determination that an expert's methods are reliable, the court must assure that the methods are

---

[1] The disclosures included revised disclosures for both proposed witnesses and what appears to be a revised CV for Brandon Austin.

[2] Mr. Wendt is not re-renewing his request for further relief regarding inadequate disclosures. He has previously litigated this issue before the District Court and the Magistrate Court. He notes, again, the limitations of the government's disclosures but remains open to further disclosures should the government reconsider its limited approach.

adequately explained." *United States v. Hermanek*, 289 F. 3d 1076, 1093 (9th Cir., 2002) (reviewing testimony by a law enforcement officer whose expertise was largely proffered to explain certain drug commerce jargon to jurors and finding that some of the opinions stated had no identifiable reasoning, or methodology). It is significant that *Hermanek* involved far more modest aims for the testifying law enforcement expert than the broad aims reflected in the government's disclosures in this case which seek to establish the fundamentals of the RICO conspiracy.

In this respect, the concerns reiterated for months by the Wendt defense (joined by other defenses) tracks the problem identified in *Claar v. Burlington Northern R.R.,* 29 F. 3d 499, 502 (9th Cir., 1994) regarding the lack of adequate explanation for proffered opinions. In *Claar*, the Circuit found that the District Court could not make findings required by F.R.E. 702 because the Rule 16 disclosures were "devoid of any such explanation" despite the fact that "The district court repeatedly ordered the experts to explain the reasoning and methods underlying their conclusions…"

Closer to home, Judge Orrick addressed this class of problematic conclusory opinions in his Order in *U.S. v. Williams*, Case No. 13-CR-00764-WHO (N.D. Cal., March 9, 2016), Doc 927, p. 10 where he explained that an officer's referring to general investigations, conversations with other officers, conversations with alleged gang members, and local citizens were not sufficiently tied to an opinion rendered by an alleged "gang sign" to allow the Court to find the opinion both reliable and admissible.

Reviewing the litigation and disclosure process over the last six months, the "enterprise expert" disclosures have not added information about reasoning, methodology, and the reliability of the underlying opinions. As can easily be demonstrated by the discussion immediately below, the now partially footnoted disclosures do not indicate compliance with this Court's directive that the government pay heed to Judge Alsup's formula from the June 8, 2010, *Cerna* litigation Order. The inevitable result can be anticipated. The government will argue that it has gone "above and beyond" and that the matter should proceed to hearing. The Wendt defense will respond, as it had both in this Court and before Judge Beeler, that the upcoming 702 hearing will require the defense to focus first on whether there are bases for each opinions and then address the admissibility (including the reliability) of those opinions for which it appears that there is a adequately disclosed basis.

C. <u>Several Examples of the Footnoted Opinions Reflect the Lack of Disclosure.</u>

For example, the government provides no basis for the following highly prejudicial opinions regarding "vertical structure" and violent confrontations:

> 20a. HAMC charters have a vertical structure. Six members are required for the charter to operate and remain functional. However, there have been exceptions to this six full patch member rule in the past. All charters report to the higher levels of the organization at the regional, national and world level. This formula is present across the globe. Once they become an official charter, they receive a certificate from the HAMC Corporation, and they agree to abide by the bylaws, rules and regulations of the HAMC. [No Footnote]

> 35. The HAMC has also been involved in violent confrontations with the Outlaws, Pagans, and Banditos OMGs over territory. [No Footnote]

Similarly, the following highly inflammatory opinions are supported by incomplete and vague references which are, for the most part, unverifiable. Emphasis has been added to highlight the vague nature of the information:

> 15. The **Filthy Few** tag means a member or prospect has committed an act of violence in furtherance of the gang. If a prospect commits an act of violence, he must wait until he receives his full patch. It can be rewarded for committing a murder, assault or a beating. A member can wear the Filthy Few as a tag or side rocker. It can also be displayed on indicia or the gas tank of a Filthy Few member. The killing or violent act has to be witnessed by another member, and one can only receive the tag from another Filthy Few member. If you are a member of the Filthy Few, you can be called upon to commit additional violent acts, which is depicted with **"666"** in the middle.[7]

> [7]The basis for Specialist Scheetz's testimony includes his experience investigating the HAMC, conversations *with undercover officers, informants, and current and former members of the HAMC, and his review of literature* produced by and about the HAMC. He has reviewed *internal HAMC documents* seized during investigations in both the United States and Europe. For instance, he has reviewed an expert report prepared by Jorge Gil –Blanco, produced at EXPERT-00000254 – EXPERT-00000318. This report contains a discussion of the Filthy Few tag at EXPERT-00000281. Specialist Scheetz has also attended and monitored at least *150 events* where Hells Angels were present. During some of those events, he has personally observed members of the HAMC wearing the "Filthy Few" tag. In addition, Specialist Scheetz has viewed photographs of members of the HAMC wearing the "Filthy Few" tag. In addition, Specialist Scheetz was involved in ATF Operation Black Diamond (*United States v. Rosga et al*, 10-CR-170 (EDVA)), in which he debriefed *a source* and spoke to him/her about the meaning of the Filthy Few tag. In addition, Specialist Scheetz has reviewed *press articles and books* that

describe the Filthy Few tag. One example of a book that describes the Filthy Few Tag is Hell's Angels: Three Can Keep a Secret if Two Are Dead, by Yves Lavigne.

……

20. **Charter**. The basic organizational unit of the HAMC is the charter, which is operated out of a city or county. Each charter is self-sufficient in the sense that all of its members have a say in the charter's decisions, internal disciplinary measures against members, and other activities of the charter.[12]

[12] The basis for Specialist Scheetz's testimony includes his *experience investigating the HAMC, conversations with undercover officers, informants, and current and former members of the HAMC*, and his *review of literature* produced by and about the HAMC. For instance, Specialist Scheetz has reviewed internal Hell's Angels documents, *such as* Hells Angels rulebooks (EXPERT-00000002–EXPERT-00000149, EXPERT-000000222 – EXPERT-000000253, EXPERT-0000364, EXPERT-00000365–EXPERT-00000395) and internal communications (EXPERT-00000221). Information about the structure and autonomy of charters can be found specifically *(among other places)* at EXPERT-00000370 and EXPERT-00000375. In addition, Specialist Scheetz is also aware of *several instances* in which charters have been strategically established in rival territory. For example, the Hells Angels opened a charter in Michigan in 2020. Specialist Sheetz is aware that Michigan has a significant Outlaws Motorcycle Club presence.

These selected opinions illustrate the reasons for the Wendt team's concerns. The government references second and third hand information made known to its proffered experts, and their consideration of literature referenced in only general terms as well as the experts' consideration of historical events as bases for the opinions. This information only gets us part way to a recognizable disclosure, attentive to the requirements of an experience based opinion, as discussed in the case law, and in the Advisory Committee Notes to the 2000 Amendment to Rule 702 which explains that: "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." As the Ninth Circuit pointed out in *Daubert II, Daubert v. Merrell Dow Pharma. Inc.,* 43 F. 3d 1311, 1319 (9th Cir., 1995) presenting an experts' qualifications and conclusions together with assurances of reliability, "… that's not enough."

II. <u>Second and Third-wave Expert Disclosures</u>

As the Court may recall, in August 2019 the defense and government agreed upon a disclosure schedule which has not been met by the government.[3] Since the last calling of the case, the government has not provided further CAST or "third-wave" expert disclosures. Mr. Wendt will therefore request hearing dates and mandatory disclosure dates sufficiently in advance of those hearings.

III. <u>Mr. Wendt Advises the Court that He Anticipates Substantial Litigation Not Related to Expert Issues.</u>

Mr. Wendt has focused on expert issues given the agreement reached with the government and the theoretical ability of the parties and Court to address these issues now in order to avoid substantial delays nearer to trial. Mr. Wendt also wishes to advise the Court that he anticipates substantial litigation related to disclosure of overt acts not indirectly disclosed through the AEO discovery and the related issues as well as a potential Bill of Particulars. He is researching these

/ / /

/ / /

/ / /

/ / /

---

[3] As discussed in his January 13 Statement, in August, Mr. Wendt and the government agreed upon a staged approach for the government's three waves of experts. Mr. Wendt and the government shared the express purpose of moving this case toward trial by "teeing up" issues which could be litigated now to avoid future delays. To make this work, the parties agreed to a timetable which is now substantially delayed. The timetable included full enterprise disclosure by October 4, 2019, full CAST disclosures by October 4, 2019, and full disclosures for other experts by January 10, 2020. Mr. Wendt regrets to inform that it appears that disclosures are not complete for any of the phases and, in fact, that the third wave disclosures are, for all practical purposes, non-existent.

issues and intends on initiating this litigation when he has completed necessary investigation. He advises the Court to avoid the appearance that this case will only require work related to experts in the near and medium-term future.

Dated: March 6, 2020  Respectfully Submitted,

                                            MARTIN ANTONIO SABELLI
                                            JOHN T. PHILIPSBORN

                                           */s/ John T. Philipsborn*
                                            JOHN T. PHILIPSBORN
                                            Attorneys for Brian Wayne Wendt