MARTÍN ANTONIO SABELLI - SBN 164772
Law Offices of MARTIN SABELLI
740 Noe Street
San Francisco, CA 94114-2923
(415) 298-8435
msabelli@sabellilaw.com

JOHN T. PHILIPSBORN - SBN 83944
Law Offices of JOHN T. PHILIPSBORN
507 Polk Street, Suite 350
San Francisco, CA 94102
(415) 771-3801
jphilipsbo@aol.com

Attorneys for BRIAN WAYNE WENDT

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | **Case No. CR-17-00533-EMC** |
|---|---|
| Plaintiff, | **BRIAN WENDT'S REPLY TO GOVERNMENT RESPONSE TO JOINT DEFENSE LETTER REQUEST RE CAST EXPERT DISCOVERY (DOC 1356) [EXHIBIT SUPPLIED]** |
| vs. | |
| JONATHAN JOSEPH NELSON, et al., | |
| Defendants. | **Dept: The Honorable Laurel Beeler, Magistrate Judge** |

## I.   INTRODUCTION

The Wendt defense replies here to the Government's Opposition to the Joint Defense Discovery Request (Docket 1337 and 1356) by making two simple points. First, the Government's Opposition does not address the specifics of the defenses' most recent discovery letter brief including sufficient disclosure of expert methodology as required by Rule 16(a)(1)(F) and discussed in the Advisory Committee Notes to the 1993 Amendment. Second, the Government's citations to Northern District rulings are misleading in that these rulings did not address the constellation of discovery issues identified by the defense here and therefore the analysis relied upon by the Government

does not track the issues before this Court.

II. **PROCEDURAL HISTORY OF THIS MOTION**

On November 29, 2020, the defense filed a Joint Defense Letter Brief with specific requests focused on the Government's proposed FBI CAST Expert Meredith Sparano. (Docket 1337). The five-page letter renewed previous requests for disclosure of training materials and methodological studies (including validation studies from CAST) and sought information regarding the reliability of the proposed CAST unit methodology. The defense also requested the foundation for the PowerPoint presentation which the Government has proffered as both the summary and "evidence" of Agent Sparano's analysis and methodology. (Docket 1337 at pp 4-5). Finally, the defense requested Ms. Sparano's final opinions within the meaning of F.R.C.P. 16(a)(1)(G).

The Government has responded (Docket 1356), arguing that no court that the Government is aware of "has ever ordered the disclosures sought by the defense." (Docket 1356, at 1:22) (footnote omitted). The Government further argued, based on a patchwork of inapposite *Daubert* and Rule 16 rulings, that the Government has complied with its obligations under Rule 16. The Wendt defense disagrees for the reasons argued below.

III. **ARGUMENT AND AUTHORITIES**

A. **The Government's Citations Do Not Address the Issues Before the Court.**

The Government correctly argues that there have been cases in the Northern District of California in which District Judges have addressed cell phone related issues. This reply to the Government's response is focused in part on cases cited by the Government that were litigated in the Northern District apparently invoking the sense that this Court would be departing from the local practice, culture, and interpretation of law should it grant the defense requests.

Chronologically, the first of the cases decided in the Northern District cited by the Government is *United States v. Cerna, et al.*, 2010 U.S.Dist. LEXIS 62907; 2010 WL 2347406 (N.D.Cal, June 8, 2010), a case decided by Judge Alsup. It might have been

useful for the Government to remind the Court that *Cerna* has been cited by both parties for a number of propositions. Judge Alsup's much-cited *Cerna* ruling is one that covers gang experts and addresses crime lab expertise, pathology-related records, and some cell phone information. The Government accurately quotes Judge Alsup in explaining that Rule 16(a)(1)(G) "does not require recitation of the chapter and verse of the expert's opinions, bases, and reasons…." *Cerna*, at 2010 U.S.Dist. LEXIS 62907, at page 9. But the citation is to language that Judge Alsup used in relation to a series of defense requests for documentation and foundational information from a *firearms examiner* who was then employed by the San Francisco Police Department which was not a part of the Government team in that case. Judge Alsup explained that among other things the defense could attempt to obtain the additional information it sought, either through subpoenas or through the witnesses. *Id.*, at 12.[1] The *Cerna* ruling does not address issues raised here. It is not focused on a CAST expert and simply deflects defense "discovery" efforts into the realm of subpoenas given the identity of the expert in that case.

Moreover, the cellular phone issues in *Cerna* are not the issues framed in this case. Rather, the questions were about the downloading of particular cellular devices. *Id.*, at 15. The Government's citation makes little sense given that this case does not involve those issues. While it is true that in the *Cerna* case the Government did seek to introduce evidence about cell phone location late in the case, that matter arose during trial, and the defense did not frame discovery requests in the way it framed them in this case.[2]

---

[1] One of the issues unmentioned by the Government that existed in *Cerna* was that there was a question of which local agencies were folded into the Government's prosecution team for *Brady* disclosure analyses. This was a point specifically made by Judge Alsup in relation to the firearms examiner's expert disclosures. *Cerna*, at page 12, fn.2. One of the questions was the extent to which it was incumbent on the Government to disclose information from local agencies. In that case, the Government expressly disavowed the SFPD as part of the investigative team.

[2] Undersigned Sabelli and Philipsborn were both lawyers defending two of the accused in the *Cerna* trial that took place before Judge Alsup. Undersigned Sabelli was one of the primary litigators for the defense when the question of the admissibility of government cell phone evidence arose during the course of the trial. The trial in that case took place in 2011, at a point at which a number of the rulings on the admissibility of cell phone opinion evidence cited by the parties in their various exchanges in this case

The Government then cites the Court to Judge Gonzalez Rogers' ruling in *U.S. v. Cervantes*, 2015 U.S.Dist. LEXIS 127048, 2015 WL 556 9276 (N.D.Cal, September 22, 2015) in which Judge Rogers found a much more fulsome Government proffer to be sufficient to address the specific requests made in that case. Judge Gonzalez Rogers found the disclosures adequate noting in her ruling that the defense lawyers "were provided with the experts' CVs, call detail reports, explanatory documents including term definitions and e-mails, and analysis reports, *including summaries of the methodologies employed and the experts' conclusions.*" 2015 U.S.Dist. LEXIS 126048, at pp. 6-7, emphasis supplied). Certain maps were provided based in part on a field test that had taken place in December of 2012. *Id.*, at 6-7. In that case, the Court specifically mentions that a particular kind of cellular network mapping system, a JDSU E6474A device, was used in that case for drive testing. (See Exhibit A appended to this Reply, excerpt manufacturer's pamphlet, drive test mapping tool.) *Cervantes, id.*, at 6-7. Judge Gonzalez Rogers found, given the issues raised by the defense in that case, that the disclosures provided were sufficient.[3]

The Government's citation to the *Cervantes* case warrants some discussion because it underscores the difference between the type of foundation made available in *Cervantes* and the foundation made available here. Focusing specifically on the requested bases for the opinions that are embodied in Ms. Sparano's PowerPoint in this case – a request reiterated in defense Document 1337 at pages 4-5 – in this case there was no drive test or experimental methodology (which is part of what a drive test is) at issue

---

had not yet been decided. Moreover, part of the *Cerna*-related expertise that the Government sought to introduce in answer to some of the defense's evidence in that case involved hands-on, local evaluation of the characteristics of a cell phone tower that is not the type of question at issue here.

[3] As it happens, undersigned Philipsborn was one of the lawyers who filed both the discovery motions and challenges to CAST evidence in the *Cervantes* case. In sharp contrast to this case, as noted in Judge Gonzalez Rogers' ruling, there had been drive testing that had occurred in the *Cervantes* case that arguably formed part of the basis for the expert opinion in that matters. That information had, as noted by Judge Gonzalez Rogers, been disclosed to the defense – a sharp contrast with the situation here. The Government fails to explain that.

here. There was such a test in *Cervantes*, such that the Government could argue that its expert had not only reviewed records concerning calls, but then had conducted a drive test in the East Bay.

The Advisory Committee Notes to the 1993 Amendment of Rule 16 referencing expert disclosures explains that "the requesting party is entitled to a summary of the expected testimony. This provision is intended to permit more complete pretrial preparation by the requesting party." In his 2017 book *Cell Phone Location Evidence for Legal Professionals: Understanding Cell Phone Location Evidence from the Warrant to the Courtroom*, Larry Daniel explains that: "Any map created by an expert or analyst should be based on known factors and should not lead the jury to believe that the expert knows more than is possible from a set of call detail records.…Unless there is a radio propagation map or drive testing map that is relevant, no information about radius or coverage should be assumed." Pages 56-57. In other words, without sufficient underlying data, creating maps purporting to show cell tower characteristics is potentially misleading and unreliable. And indeed, the point made in the just-cited publication differentiates the underlying level of disclosure in the *Cervantes* case from the disclosure and methodology used here. In *Cervantes*, drive testing was a factor disclosed to the defense that provided part of the analytical and methodological frame for the opinions being stated. The defense has repeatedly sought that analytical and methodological frame here and has reiterated it with respect to the PowerPoint.

The Government cites other Northern District of California rulings, including *U.S. v. Martinez*, 2015 U.S.Dist. LEXIS 11315, 2015 WL 42314 (N.D.Cal, January 30, 2015).[4] Again, left unargued and undisclosed by the Government is the fact that in *Martinez* part of what was at issue was the extent of the Government's obligations of disclosure where the record was as follows: "The government's disclosure states: 'TFO

---

[4] Perhaps not coincidentally, this is yet another case in which undersigned Sabelli was one of the defense lawyers.

**BRIAN WENDT'S REPLY TO GOVERNMENT RESPONSE TO JOINT DEFENSE LETTER REQUEST RE CAST EXPERT DISCOVERY (DOC 1356)**
5

Hansen will go to those locations to determine which cell towers are used at those locations.'" *Id.*, 2015 U.S.Dist. LEXIS 11315, at pp.4-6. Judge Alsup's ruling on the specific issue was that in part since he had already found that "the government will provide the defense with the final historical cellsite analysis report…" before trial, and given that the defense was on notice that further specific cell tower location review was in progress, the disclosures were sufficient. *Id.*, at 5-6. Note, however, that in context, Judge Alsup's order also specified "if at trial the testimony exceeds the government's disclosure, then the excess testimony will be excluded." *Id.*, at 6-7.

The Government is also not helped by its citation to *U.S. v. Johnson*, Judge Henderson's ruling at 2015 U.S.Dist. LEXIS 11921; 2015 WL 5012949 (N.D.Cal, August 24, 2015). That ruling, much of which is devoted to a defense motion to exclude firearms testimony, does include a ruling admitting an analysis of historical cell phone evidence intended to contradict a defendant's statement that he was only occasionally in an area of a cell tower to which his phone was linked several times on a particular evening. The issue at hand was not specific to discovery. Rather, it focused on allowing a CAST Agent to testify that the cell site data established that the cell phone was in the general geographical location area as explained in a specific pretrial disclosure declaration. *Id.*, at 19-21. That is not the issue raised here.

Finally, the Government cites Judge Orrick's "Order on *Daubert* Motions" that appears in *U.S. v. Alfonso Williams*, Case No. 13-CR-00764-WHO, filed January 27, 2016. The Order cited covers "a variety of *Daubert* motions…" concerning gangs, sex trafficking, cell phones, fingerprints, and DNA. (Material cited is from Judge Orrick's January 27, 2016 Order at lines 13-15.)  The Order in question is *five pages* long. The first page of the Order makes it clear that further disclosures are going to be provided to the defense in some of the subject areas. The ruling on the cell phone expert is exactly *five lines* long. (See *Williams* Doc 836 at page 4 line 25 to page 5 beginning at line 1.) The ruling is clearly not aimed at cell phone discovery, because it begins in pertinent part:  "At the hearing, defendants stated they have the have the information they need and

BRIAN WENDT'S REPLY TO GOVERNMENT RESPONSE TO JOINT DEFENSE LETTER REQUEST
RE CAST EXPERT DISCOVERY (DOC 1356)
6

submitted on my tentative ruling on this motion." (From *Williams* Doc 836, page 4:25-26.) To cite the *Williams* Order in question as informative on the subject of discovery is, to put it charitably, a dubious response to the defense motion.

One of the rulings cited by the Government that does actually at least touch on some of the relevant subject matter is *U.S. v. Jones*, 918 F.Supp.2d 1 (D.C. District Court, 2013) [cited by the Government in Doc 1356 for the proposition that the use of cell phone location records to determine general location of a cell phone is accepted in Federal courts]. One of the issues that was taken on by the court and parties in the *Jones* case – in the context of a *Daubert*/403 motion – was the question of the methodology for determining and plotting the 'wedges' shown in particular illustrations of cell tower locations. In its ruling, the District Court explained how the testifying Agent "plotted on a map the location of the precise cell tower and sector that the phones connected to…," and then further, that the depicted areas were not "meant to convey the coverage area of the signal coming from that antenna. The wedge is drawn in simply to indicate the direction of the sector to which the phone connected." *Id.*, at 5-6.

First, *Jones* is not a discovery case, but helpfully it explains what methodological evidence connected with a trial exhibit consists of. Second, in *Jones*, as noted, the court apparently was provided a description of the methodology, together with a statement of limitations about the significance of the resulting illustrations.

The defense in this case has repeatedly asked for a description of the methodology, and for the foundation for the opinion stated – as well as for the exact nature of the actual opinions. The cases cited by the Government do not address the problems inherent in the disclosures related to Agent Sparano.

**B.   The Government Has Not Identified a Reliable Methodology.**

The government has failed to explain the reliability of the historical CAST analysis including the accuracy of the "theoretical illustrations" – cell tower coverage maps – that carry enormous weight with jurors. In fact, the Government's disclosure lists several types of validation studies but does not describe whether or how they were used

in this case except to convey that one methodology, drive testing, was not used.[5] Instead, in its disclosure letter, the Government describes very generally what types of tests are available without explaining their relevance to this case:

> Paragraph 9: Cell tower surveys and drive tests have been utilized over the past ten years by CAST Agents to verify the accuracy of theoretical illustrations. While these methods typically refine the footprint created by a cell tower, they also support the use of historical cell site data to illustrate the approximate location of a phone at the time a call is generated, as depicted in the maps below.

This paragraph, as well as paragraphs 7 and 8, describe available methodologies but not which (or whether) any were used and, moreover, use ambiguous terms ("typically refine" or "support" and "approximate"). Indeed, given the concession in paragraph 13 that drive testing was not used, the defense does not understand why drive testing is referred to in paragraphs 8 and 9 as bases for reliability.

In addition to side-stepping the issue of verifying cell tower coverage, the government does not acknowledge or explain that the work of Agent Sparano is based in great part on methodologies in the possession of the cell service provider and not the government. Further, the cell service provider developed these technologies not to provide retrospective pinpoint phone locations but for phone network management purposes. That is, Agent Sparano's cell tower verification – whatever it might have been – depends in part on the algorithms developed by AT&T for the company's purposes. These algorithms are therefore part of the *Daubert* equation but have not been disclosed. What we have is, in essence, a black box regarding how AT&T generates data that may be relevant to general location information. In this respect, the defense notes that the Advisory Committee Notes to the 1993 Amendment to Rule 16(a)(1)(F) explain that "the [1993] Amendment requires a summary of the bases relied upon by the expert. That should cover not only written and oral reports, tests, reports, and investigations, but any

---

[5] Please see the last line of paragraph 13: "No drive test was performed in this case."

other information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts."

AT&T uses what is called NELOS [Network Event Location System] to oversee its network.[6]  It is unclear whether Agent Sparano has relied on any NELOS data in her maps/power point—yet another failure of disclosure of methodology. On August 6, 2020, in an unpublished case, the Court of Appeals of Indiana explained in passing that according to the record in the case: "NELOS data does not provide precise location data." *Browning v. State*, 2020 Ind.App. Unpub. LEXIS 959 (Indiana Court of Appeals, August 6, 2020) at pages 4-5.  The evidence in the case was that an FBI Agent had assisted in the investigation of criminal activity and had used "…the NELOS and Drive Test data to create maps depicting approximately locations for [the suspects'] cell phones during the relevant time…." *Id.*, at 5-6. [There was no drive test in *this* case]

Another unpublished state court ruling, this from the Court of Appeals of Ohio, in *State v. Burke*, 2019-Ohio 1951 (May 20, 2020), explains at some length the history of a murder case investigation explaining how a map relating to cell phones was created: "The other report shows a map indicating where and when Austin's phone 'pinged' a cell tower, even if the phone was not being used at the time.  The 'pings' are often random; the information is used internally by AT&T for network distribution purposes.  AT&T refers to this report as 'NELOS.'" *Id.*, at 111.  The ruling goes on to explain that the report was the subject of a motion to suppress.  In *People v. Grant*, Michigan Court of Appeals decision from November 26, 2019, again unpublished, a law enforcement officer and a defense expert were described as making reference to NELOS, with the court noting that the law enforcement officer explained that the System "provides 'an approximate location' for a cell phone receiving service from AT&T. [The officer] testified that 'NELOS is not GPS within feet.  NELOS is an approximation of the [cell phone].'  Accordingly, he could give only an approximation of the defendant's

---

[6] Daniel, *supra*, *Cell Phone Location Evidence for Legal Professionals*, at page 85.

**BRIAN WENDT'S REPLY TO GOVERNMENT RESPONSE TO JOINT DEFENSE LETTER REQUEST RE CAST EXPERT DISCOVERY (DOC 1356)**
9

location…." *People v. Grant*, 2019 Mich.App. LEXIS 7465 (First Dist. Court of Appeals, November 26, 2019), unpublished, pages 7-9.

The Defense found one reference to NELOS in reference to mobile locator service information, together with a number of other similar descriptions of items sought in an application for an order for information related to cell phone information in *U.S. v. Evans*, 2018 U.S.Dist. LEXIS 219506 (E.D.NC, December 20, 2018).  In other words, having engaged in an effort to try to understand, through independent inquiry, what the source of data analysis used by the Government through Agent Sparano likely is/was, the defense made little progress given the paucity of information contained in the Government's disclosures, and the very little information available in pertinent literature or in the unpublished cases available that reference NELOS.[7]

## CONCLUSION

The Government's refusal, or inability, to disclose a reliable methodology is not collateral. The government's stated intent is to prove up a conspiracy to murder (Counts 1, 2, and 3) based in great part on circumstantial CAST opinion testimony in the form of the purported analysis and interpretation of cell phone records and inferences drawn from cell phone information and records. Notwithstanding this game plan, the Government has refused to provide the full measure of required expert disclosures.

Dated: December 11, 2020           Respectfully Submitted,
                                   MARTIN ANTONIO SABELLI
                                   JOHN T. PHILIPSBORN


                                    */s/ John T. Philipsborn*
                                   JOHN T. PHILIPSBORN
                                   Attorneys for Brian Wayne Wendt

---

[7] Undersigned counsel were unable to find a published ruling that described or mentioned NELOS.  The defense does not represent that it engaged in what would be described as a fully exhaustive search.  A good faith effort to at least word search through State and Federal court electronic libraries was undertaken.

**BRIAN WENDT'S REPLY TO GOVERNMENT RESPONSE TO JOINT DEFENSE LETTER REQUEST RE CAST EXPERT DISCOVERY (DOC 1356)**

# PROOF OF SERVICE

I, Melissa Stern, declare:

That I am over the age of 18, employed in the County of San Francisco, California, and not a party to the within action; my business address is Suite 350, 507 Polk Street, San Francisco, California 94102.

On December 11, 2020, I served the within document entitled:

**BRIAN WENDT'S REPLY TO GOVERNMENT RESPONSE TO JOINT DEFENSE LETTER REQUEST RE CAST EXPERT DISCOVERY (DOC 1356) [EXHIBIT APPENDED]**

( )   By placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at San Francisco, CA, addressed as set forth below;

(X)   By electronically transmitting a true copy thereof through the Court's ECF system;

( )   By having a messenger personally deliver a true copy thereof to the person and/or office of the person at the address set forth below.

AUSA Kevin Barry
AUSA Ajay Krishnamurthy
AUSA Lina Peng
All defense counsel through ECF

Executed this 11th day of December, 2020, at San Francisco, California.

Signed:   */s/ Melissa Stern*
          Melissa Stern