JOHN T. PHILIPSBORN - SBN 83944
Law Offices of JOHN T. PHILIPSBORN
507 Polk Street, Suite 350
San Francisco, CA 94102
(415) 771-3801
jphilipsbo@aol.com

MARTÍN ANTONIO SABELLI - SBN 164772
Law Offices of MARTIN SABELLI
740 Noe Street
San Francisco, CA 94114-2923
(415) 298-8435
msabelli@sabellilaw.com

Attorneys for BRIAN WAYNE WENDT

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JONATHAN JOSEPH NELSON, et al.,<br><br>    Defendants. | **Case No. CR-17-00533-EMC**<br><br>**DECLARATION IN SUPPORT OF WENDT DEFENSE (1)** ***IN LIMINE*** **MOTION TO EXCLUDE EVIDENCE TECHNICIAN OR FORENSIC EXAMINER TESTIMONY RE PROCESSING/TESTING OF FRESNO CLUBHOUSE (F.R.E. 401, 402, 403); (2) MOTION TO DETERMINE WHETHER EVIDENCE OF LUMINOL OR OTHER PRESUMPTIVE TESTING SHOULD BE EXCLUDED UNDER F.R.E. 702 AND 403 AND UNDER** ***DAUBERT/KUMHO TIRE*** **AND RULE 16; REQUEST FOR JUDICIAL NOTICE [EXHIBITS APPENDED TO DECLARATION]**<br><br>**Date: February 24, 2021**<br>**Time: 10:00AM**<br>**Dept: The Honorable Edward M. Chen**<br>            **District Judge** |

I, John T. Philipsborn, declare that:

**DECLARATION IN SUPPORT OF WENDT (1) *IN LIMINE* MOTION TO EXCLUDE EVIDENCE TECHNICIAN TESTIMONY RE PROCESSING OF FRESNO CLUBHOUSE; (2) MOTION TO DETERMINE WHETHER EVIDENCE OF LUMINOL TESTING SHOULD BE EXCLUDED UNDER F.R.E. 702 AND 403, UNDER *DAUBERT/KUMHO TIRE*, RULE 16; REQUEST FOR JUDICIAL NOTICE**

1

1. Martín Sabelli and I represent Mr. Wendt in this case.

2. I prepared the pleadings to which this declaration pertains. Mr. Sabelli assisted with the Memorandum of Points and Authorities.

3. In the motion, as well as in the supporting memorandum, I have made mention of: discovery received from the Government; copies of FBI laboratory reports sent to the defense on January 26, 2021, covered by a letter of that same date; case law; and information about presumptive blood testing in the forensic setting. I believe that I have correctly cited source materials in all of these categories and have accurately quoted from those sources.

4. In making reference to literature in the forensic sciences addressing presumptive blood testing, I have attempted to correctly characterize literature in a variety of journals and reports on the forensic sciences that explains that there are variables that will influence whether applying a chemical reagent or luminescent agent to suspected blood evidence or locations in which blood may be found may produce false positives. I believe that a variety of sources address these issues and caution against reliance on presumptive blood testing at a crime scene to definitively identify human blood.

5. I was counsel of record, along with Michael Burt, in the case that resulted in one of the citations of an unpublished case dealing with presumptive blood testing, *United States v. Fell*, 2015 LEXIS 82548; 2015 WL 3887151 (D.Vt, June 23, 2015). While I did not conduct the evidentiary hearing that was involved in that case, I was present for the testimony that led to the ruling by Chief Judge Crawford of the District of Vermont. The significance of the ruling in the context of this case is to underscore, first, that in several Federal Courts, evidence has been presented in *Daubert* litigations involving motions to exclude serological evidence of the results of *presumptive* and confirmatory blood testing. As discussed in the appended Memorandum, where no confirmatory testing is available a number of courts (Federal and State) have excluded the presumptive testing results. In the *Fell* and *McCluskey* cases that I have cited, the

1  District Courts did receive information during *Daubert* hearings on the various Lab
2  procedures involved in presumptive blood testing.  Scientific evidence is involved in
3  blood testing when there are resumptive and confirmatory or further tests, including
4  serological tests; blood chemistry tests; and DNA testing involving blood evidence.  The
5  protocols in use by the FBI in laboratory settings call for an analyst to use certain specific
6  procedures in using presumptive blood testing in an effort to identify blood.  In *Fell*, as in
7  other cases in which the use of presumptive blood testing in a laboratory setting was
8  challenged, expert evidence was presented to assist the court in making its determination.

9        6.     In this case, as demonstrated in Exhibit B appended here, which is an
10  exhibit containing a segment of the Government's January 26, 2021 letter to defense
11  counsel (I have omitted the first page so as to omit addresses and e-mail addresses).  The
12  Government discusses its desired proffer of evidence from evidence technicians who
13  processed the Fresno Hells Angels clubhouse on November 20, 2017.  Appended to that
14  letter and transmitted with it was a series of reports, together with a CV pertinent to
15  Amanda Bakker, who is proposed as a witness in this case to discuss among other things
16  "…the difference between a presumptive test and a confirmatory test…."  None of the
17  information pertinent to Ms. Bakker's actual proposed testimony on these points is made
18  available in the Government's disclosure.  What is made available, however, is the result
19  of Ms. Bakker's processing at the FBI laboratory of evidence taken from the Fresno
20  clubhouse on November 20, 2017, and sent to the lab for processing.  Ms. Bakker
21  concluded that no blood evidence was indicated, and therefore no confirmatory or further
22  testing was done on the items that I describe in the motion.

23        7.     I believe I have accurately characterized the fact that in addition to there
24  being no description of Ms. Bakker's opinions about the FBI's serological examination
25  protocols and procedures or her opinions about presumptive and confirmatory blood
26  testing, the Government has provided no information concerning the actual presumptive
27  tests that are claimed to have been done by evidence technicians within the Fresno
28  clubhouse on November 20, 2017, in addition to Luminol processing.

**DECLARATION IN SUPPORT OF WENDT (1) *IN LIMINE* MOTION TO EXCLUDE EVIDENCE TECHNICIAN TESTIMONY RE PROCESSING OF FRESNO CLUBHOUSE; (2) MOTION TO DETERMINE WHETHER EVIDENCE OF LUMINOL TESTING SHOULD BE EXCLUDED UNDER F.R.E. 702 AND 403, UNDER *DAUBERT/KUMHO TIRE*, RULE 16; REQUEST FOR JUDICIAL NOTICE**

8. The omissions just described appear to me to put the Government out of compliance with Rule 16(a)(1)(F) and (G).

9. I am attaching some literature that pertains to Luminol testing, including an article by Quickenden, et al., titled *A Study of Common Interferences with the Forensic Luminol Test for Blood*. The actual citation can be seen in the article appended as Exhibit C.

10. I am also appending a report of a study by DiCarlo, et al., titled *A Quantitative Evaluation of the Effect Cleaning Products Have on the Bluestar Test for Latent Blood*. The citation for that article appears on the face of the article. Bluestar is a brand name for a type of Luminol that is addressed in case law that I have cited to the Court in the accompanying papers.

11. I do not believe that the Government's proposal to have evidence technicians testify about the observed reaction of a chemical agent or reagent or luminescent agent applied in various parts of a suspected crime scene with descriptions of the observed reaction and explanations of it qualifies as non-expert lay testimony under any reasonable reading both of the law and of the proposed testimony.

12. I believe it is incumbent on the Government to provide further information about the actual testing done and about the FBI's applicable laboratory protocols if the Government is going to go forward with its proposed testimony as explained in the contents of Exhibit B, the January 26, 2021 transmission to defense counsel.

I declare under penalty of perjury that the foregoing is true and correct, except as to those matters alleged on information and belief, and as to those matters, I believe this declaration to be true and accurate.

Executed this 3rd day of February, 2021, at San Francisco, California.


　　　　　　　　　　　　　　　　　　　 */s/ John T. Philipsborn*
　　　　　　　　　　　　　　　　　　　 Declarant

# PROOF OF SERVICE

I, Melissa Stern, declare:

That I am over the age of 18, employed in the County of San Francisco, California, and not a party to the within action; my business address is Suite 350, 507 Polk Street, San Francisco, California 94102.

On February 3, 2021, I served the within document entitled:

**DECLARATION IN SUPPORT OF WENDT DEFENSE(1) *IN LIMINE* MOTION TO EXCLUDE EVIDENCE TECHNICIAN OR FORENSIC EXAMINER TESTIMONY RE PROCESSING/TESTING OF FRESNO CLUBHOUSE (F.R.E. 401, 402, 403); (2) MOTION TO DETERMINE WHETHER EVIDENCE OF LUMINOL OR OTHER PRESUMPTIVE TESTING SHOULD BE EXCLUDED UNDER F.R.E. 702 AND 403 AND UNDER *DAUBERT/KUMHO TIRE* AND RULE 16; REQUEST FOR JUDICIAL NOTICE [EXHIBITS APPENDED TO DECLARATION]**

( )  By placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at San Francisco, CA, addressed as set forth below;

(X)  By electronically transmitting a true copy thereof through the Court's ECF system;

( )  By having a messenger personally deliver a true copy thereof to the person and/or office of the person at the address set forth below.

AUSA Kevin Barry
AUSA Ajay Krishnamurthy
AUSA Lina Peng

All defense counsel through ECF

Executed this 3rd day of February, 2021, at San Francisco, California.

Signed:   */s/ Melissa Stern*
          Melissa Stern

DECLARATION IN SUPPORT OF WENDT (1) *IN LIMINE* MOTION TO EXCLUDE EVIDENCE TECHNICIAN TESTIMONY RE PROCESSING OF FRESNO CLUBHOUSE; (2) MOTION TO DETERMINE WHETHER EVIDENCE OF LUMINOL TESTING SHOULD BE EXCLUDED UNDER F.R.E. 702 AND 403, UNDER *DAUBERT/KUMHO TIRE*, RULE 16; REQUEST FOR JUDICIAL NOTICE

5