JOHN T. PHILIPSBORN - SBN 83944
Law Offices of JOHN T. PHILIPSBORN
507 Polk Street, Suite 350
San Francisco, CA 94102
(415) 771-3801
jphilipsbo@aol.com

MARTÍN ANTONIO SABELLI - SBN 164772
Law Offices of MARTIN SABELLI
740 Noe Street
San Francisco, CA 94114-2923
(415) 298-8435
msabelli@sabellilaw.com

K. ALEXANDRA McCLURE – SBN 189679
Law Offices of ALEXANDRA McCLURE
214 Duboce Ave
San Francisco, CA 94103-1008
(415) 814-3397
alex@alexmcclurelaw.com

Attorneys for BRIAN WAYNE WENDT

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JONATHAN JOSEPH NELSON, et al.,<br><br>    Defendants. | **Case No. CR-17-00533-EMC**<br><br>**BRIAN WENDT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO GOVERNMENT'S APPEAL OF JUDGE CORLEY'S RELEASE ORDER**<br><br>**AND**<br><br>**RENEWED MOTION TO STRIKE IMPROPER *EX PARTE* PROFFER** |

**BRIAN WENDT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO GOVERNMENT'S APEAL OF JUDGE CORLEY'S RELEASE ORDER, AS REQUESTED BY THE COURT AT MAY 7, 2021 HEARING**

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# INTRODUCTION

Brian Wendt hereby submits this Supplemental Brief to alert the Court to various facts supporting release including: (1) that an additional surety has come forward to sign a bond for Mr. Wendt, (2) that the Wendt family has pooled $50,000 in cash to secure the bond ordered by Judge Corley, and (3) that he was on pre-trial release *without blemish* during the *Laughlin* case before it was dismissed. *See United States v. Acosta*, CR-00542-JCM-PAL, Dkt. 1079 and 1086; *see also* Declaration of K. Alexandra McClure filed herewith, at ¶20. Mr. Wendt enjoys this level of support because he has established close and long-term relationships with his community – relationships which will "reasonably assure" the Court of his strict compliance with this Court's orders.

Equally as important, Mr. Wendt files this Brief to alert the Court that case law and the Constitution require this Court to consider Effective Assistance of counsel within the Due Process/prolonged detention framework urged by Mr. Wendt and endorsed by Judge Corley. In this respect, at the last hearing on this matter, this Court invited Mr. Wendt to address "whether the [*Torres*] due process analysis *allows for* consideration of the impairment of defendant's ability to prepare a defense at trial." *See* Dkt. 1735 (emphasis added). Mr. Wendt's response, addressed below, is that this Court not only *can* consider the corrosive impact on the Sixth Amendment defense function, but *must* do so given that the defense function is the bedrock of the criminal legal process. In fact, as set forth in his original Motion for Release (Dkt. 1673), courts have incorporated Effective Assistance into Due Process release analysis "even" in violent RICO cases. *See, e.g.,*

**BRIAN WENDT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO GOVERNMENT'S APEAL OF JUDGE CORLEY'S RELEASE ORDER, AS REQUESTED BY THE COURT AT MAY 7, 2021 HEARING**

2

*United States v. Gallo,* 653 F. Supp. 320, 334 (E.D.N.Y 1986). Mr. Wendt further submits that the Effective Assistance Clause is not subordinate to the Bail Reform Act which, in any case, does *not* exclude consideration of trial preparation, and in the context of temporary release, *expressly authorizes* this consideration. *See* Section 3142(i).

Mr. Wendt further submits that, apart from the theoretical interplay of Due Process and Effective Assistance, *in this case* there can be no serious doubt that prolonged detention has undermined and will continue to undermine Effective Assistance. This unconstitutional effect flows from the fact that Mr. Wendt will have been detained for over 51 months by the time of trial (assuming no further continuances), from the severe limitations on attorney-client communications imposed by the pandemic, from the profound disadvantages resulting from a transition in defense teams caused by a trial date set over objection, and because of the unilateral designations of the vast majority of meaningful discovery as AEO until the eve of trial.

Under these extreme circumstances, this Court should deny the government's appeal, lift the stay of Judge Corley's Order, and release Mr. Wendt, not only to protect his Due Process rights (defined as his short-term liberty) but also his Due Process rights defined as a fair opportunity to defend his long-term liberty through the Effective Assistance of Counsel as guaranteed by the Sixth Amendment.

# ARGUMENT

I. **A New Surety, Not Associated with the HAMC, Has Come Forward to Ensure the Court that Mr. Wendt is Reliable and the Family is Willing to Post $50,000 Cash as Security for the Bone.**

The conditions ordered by Judge Corley will more than "reasonably assure" the safety of the community. Mr. Wendt's exemplary conduct in custody, his history of adhering to the conditions of pretrial release, and the conduct of the others released in this matter including his co-accused in the VICAR murder counts, support Judge Corley's analysis and conclusion. Moreover, Judge Corley correctly found that the very lengthy passage of time in this particular case, with the exacerbating and unique fact of the pandemic, constitute a changed circumstance.

In this filing, Mr. Wendt also submits two additional changed circumstances: (1) the presence of a new surety who is willing to join Joanne, David and David Jr. Wendt in signing onto a significant bond; and (2) the Wendt family's decision to scrape together their savings to partially secure the bond with $50,000 cash that could be posted with the Clerk of the Court in order to address the Court's concern that the bond has "nothing behind it."[1] (*See* Dkt 1735, Hearing Tr. at 47).

As the concurrently filed declaration of undersigned counsel K. Alexandra McClure explains, a longtime friend of Brian Wendt and his family, Mr. Newbrough, a

---

[1] Counsel have provided all necessary information to USPTS. McClure Decl. at ¶19.

retired postal worker, has offered to serve as an additional surety. McClure Decl. at ¶12-13. This individual has his own family to support yet is willing to put his own personal finances on the line to support the release of Mr. Wendt. *Id.* at ¶14. He owns a home but is unable to post it as security because he is moving in June and is selling his home to move to Texas. *Id.* at ¶13. He has made the decision to sign onto the $250,000 bond with full understanding of the risks, and with awareness of the potential consequences. *Id.* at ¶ 17-18. Mr. Newbrough trusts Mr. Wendt and is confident that he will abide by the conditions of his release set by this Court. Mr. Newbrough, who has known Brian Wendt for 30 years, stated: "I am offering to sign onto this bond because I truly believe that he would not do anything to jeopardize his family or myself or any of his friends for this opportunity for his freedom awaiting his day in court." McClure Decl., ¶13.

These strong family and community ties more than reasonably ensure Mr. Wendt's compliance. If he were to fail, he would cause potential financial ruin to the most important people in his life: his parents, his brother and sister-in-law, and a longtime close family friend. This new evidence strongly supports release.

II. **Even if this Court Were to Conclude that Brian Wendt Is a Danger to the Community – Which he is Not – Due Process Requires Release.**

Brian Wendt does not pose a danger to the community and certainly not by clear and convincing evidence – unless one presumes him guilty of the charges. Detaining Mr. Wendt indefinitely on this ground would render meaningless the substantial body of law affirming the notion that, regardless of the circumstances, there comes a point when

detention crosses the line from regulation into punishment in violation of the Due Process Clause.

More concretely, the unsubstantiated "evidence" of danger in this case (including evidence which the defense has never seen), the weight of the evidence against Mr. Wendt who stands innocent before this Court,[2] and a 20-year- old conviction, are not the sort of compelling evidence of danger, significant enough to justify effectively disqualifying him from the relief the Due Process Clause guarantees. *See United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir 1985) ("[I]f the court impermissibly makes a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment."); *see also Aileman*, 165 F.R.D. at 578 (noting that the presumption of innocence would be an "empty pronouncement[], full of sound and fury

---

[2] Another factor to consider here is that the strength of the government's case on the merits has changed and lessened over time, given the existence of government evidence suggesting that someone other than Brian Wendt has admitted responsibility for the killing that comprises Counts 2 and 3 against him. As the court in *Gatto* noted when discussing the weight of the evidence in a case involving multiple acts of violence: "Many of the allegations against defendants concern events which occurred many years ago, and the charges of violence in the indictment are quite old." *U.S. v. Gatto*, 750 F. Supp. 664 (D.N.J. 1990). The court observed that "[g]enerally, it is difficult for the government to prove beyond a reasonable doubt allegations concerning crimes over ten years old, and there may be particular difficulty in this case." *Id.* at 674. The court concluded that the strength of the government's case had "diminished" in the 15 months the case had been pending, explaining: "At the time of the initial detention hearings, the government's case appeared very strong. After further acquaintance with the government's case and upon further reflection, the strength of the government's case on the merits appears much weaker." *Id.*

but signifying nothing, for a defendant who could be imprisoned indefinitely while awaiting trial.").

### III. This Court Must Release Mr. Wendt for the Few Remaining Months Before Trial to Allow Him a Reasonable Opportunity to Prepare for Trial.

To respond directly to the Court's inquiry, courts have incorporated the Effective Assistance analysis into the Due Process framework. As discussed in Mr. Wendt's moving papers, federal judges in Brooklyn and Manhattan realized this approach in the organized crime/RICO cases of the 1980s. In that (violent) context, Chief Judge Weinstein reasoned that "any pretrial *detention of more than 90 days* exceeds what Congress contemplated, and a pretrial detention *of more than six months should flash a warning* that a violation of due process has probably occurred." *United States v. Gallo*, 653 F. Supp. 320, 334 (E.D.N.Y 1986) (emphasis added). As Chief Judge Weinstein observed – focusing on the Sixth Amendment function in a way that seems alien to the modern practice – pretrial detention "insure(s) that the quality of the defendant's legal defense will be diluted at best, and possibly be rendered inadequate, by extended pretrial incarceration." *Gallo* at 336.

In this case, as reflected in the *ex parte* declaration submitted by Mr. John T. Philipsborn and the public declaration submitted by Ms. K. Alexandra McClure, Mr. Wendt's defense has been "diluted by extended pretrial incarceration." *Gallo* at 336. In fact, Mr. Wendt has been effectively denied the ability to sit face to face with his new attorneys and to review discovery with his counsel despite the practical need to do so in

BRIAN WENDT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO GOVERNMENT'S APEAL OF JUDGE CORLEY'S RELEASE ORDER, AS REQUESTED BY THE COURT AT MAY 7, 2021 HEARING

7

order to be prepared to face a complex "RICO conspiracy" with multiple types of evidence virtually none of which can shared and reviewed comprehensively over Zoom.[3] Obviously, the "normal" limitations of jail visits come into play, but, more importantly, Mr. Wendt faces three extraordinary and severe limitations related to the COVID pandemic, the compelled transition in his defense team, and – from a defense perspective – an epidemic of AEO restrictions in gang/RICO cases. The latter, combined with the Jencks process, creates an artificial and unfair "need" to review the most important discovery in the few months before trial and, based on that discovery, develop and initiate investigation in that same time frame. Relegating an accused to pre-trial detention, with highly restricted access to counsel due to a pandemic, with severe restrictions on access to discovery and hearings, during a transition from one lead counsel to another, does not square with Effective Assistance or the ethical duties of counsel.

Under these extraordinary circumstances, this Court should release Mr. Wendt so that he can defend his long-term liberty through a reasonable pre-trial process; that is, this Court must ensure conditions that will allow Mr. Wendt to interact meaningfully with his evolving defense team during the crucial months before trial, time in which he and his counsel will have to make up for lost time. Most importantly, Mr. Wendt and his counsel

---

[3] The government suggested at the May 7, 2021 hearing that this process was feasible because it engages in preparation with cooperators in this way with ease. The comparison fails for many reasons including the volume and nature of discovery, and the rights and responsibilities of an accused and his/her counsel. The comparison is based on a misunderstanding of the defense function. *See* McClure Decl. at ¶21-22.

will be required to sort through the witness-oriented discovery that is scheduled to be disclosed (or released from AEO status) in the months before trial and his team will need to investigate the case, including interviewing witnesses, in a reduced time frame subject to the unknowns of witness location, interviewing, and investigation during the pandemic.

### IV. This Court May Also Release Mr. Wendt Under Section 3142(i) (Temporary Release Statute) Based Upon his Need for Access To Counsel And Effective Preparation.

This Court noted at the May 7, 2021 hearing, that it may also consider access to counsel and effective preparation under 18 U.S.C. § 3142(i) (temporary release statute) and *United States v. Terrone,* 454 F. Supp 1009 (DNV 2020). Section 3142(i) provides: "The judicial officer may by subsequent order, permit the temporary release of the person, in the custody of a U.S. Marshal or another appropriate person, to the extent that the judicial officer *determines such release to be necessary for the preparation of the person's defense or for another compelling reason*." (emphasis supplied). *See e.g., United States v. Dibee*, 2021 U.S. Dist. LEXIS 3882 at *14 (D. Or. 2021) ("…the Court finds that defendant has met his burden in showing that release is necessary for him to adequately prepare his defense in this matter."). Although this statutory framework provides yet another basis on which to release Mr. Wendt related to the need for the preparation of his defense, the central and most compelling issue here is the constitutional one.

V. **The Government's Arguments at the May 7, 2021 Hearing Regarding Mr. Wendt Contradict the Government's Arguments in *Elmore*.**

The government relied on *United States v. Williams*, *et. al.* (the "*Elmore*" case) at arguments of government counsel in *Elmore* compared to the government's arguments regarding Mr. Wendt. The *Elmore* case, and in particular, the government's arguments in *Elmore*, strongly support release for Mr. Wendt and, for that reason, Mr. Wendt invites the Court to review the brief submitted by the government before the Ninth Circuit in that case. *See* Case No. 18-10421, Dkt. 10-1 at pp. 5-12.

First, the government argued in *Elmore* that Mr. Elmore had chosen to be in the second trial group and therefore had "voluntarily" delayed his trial by a year or more. That argument – as flawed as it was in that case – strongly supports Mr. Wendt's release in this case; Mr. Wendt has done nothing but demand that this process move toward trial and has requested to be tried as soon as possible. The government cannot, in good conscience, blame Mr. Elmore for his choice to be tried in the second trial group in that matter and, when the winds shift, adopt the contradictory position to detain Mr. Wendt for a period of detention much longer than that to which Mr. Elmore was subjected.

Equally or perhaps more importantly, the government argued in *Elmore* that the Court could continue to detain Mr. Elmore because the dangerousness evidence had been tried and tested in the first *Williams* trial and, therefore, the Court could have confidence in the strength of the evidence of danger. The government was, in other words, leaning heavily on the reliability of evidence vetted in a public trial to prove that Mr. Elmore should be detained as a danger. In Mr. Wendt's case, there is no first trial to undergird the

allegation of danger and, in fact, when taken to task in this respect, the government supplied – between the hearing before Judge Corley and the hearing before this Court – *ex parte* materials which are, to say the least, untested by fulsome confrontation at trial *and should be struck from the record*. This stark difference – the fact of the first trial – was not referenced by government counsel in its reliance on *Elmore* at the last hearing.

Most importantly, the evidence of Mr. Elmore's dangerousness far outweighs that of Mr. Wendt's alleged dangerousness. With respect to Mr. Elmore, the government gave the Court reasons to detain Mr. Elmore – reasons which had been tested before a jury in the first trial wave. These include allegations that (1) Elmore possessed a firearm in April 2007, and in 2009 "brandished and discharged a 9 mm assault style pistol during the funeral of a rival gang member"; (2) Elmore murdered two men, Andre Helton and Isaiah Turner, on August 14, 2008, to maintain and increase his position in CDP; (3) Elmore was involved several instance of firearms possession including the 2009 shooting where he fired into a group of mourners; (4) Elmore had a separate 2010 conviction for possessing a firearm, in violation of 18 U.S.C. § 922(g), for which he was sentenced to four years' imprisonment and three years' supervised release; (5) when released, Elmore violated his conditions of supervised release by possessing another firearm and associating with a fellow CDP member; (6) Elmore was a fugitive for six months, until his arrest in May 13, 2013; (7) before he was arrested, Elmore led police officers on a high-speed car chase, with his wife and small children in the car; (8) at the end of that chase, Elmore crashed into a guardrail and fled on foot, before finally being arrested after

a helicopter and police dog hunted him; (9) Elmore had convictions for assault with a deadly weapon, resisting arrest, carrying a concealed weapon, and receipt of stolen property. *See* Case No. 18-10421, Dkt 10-1 at 5-12. This list far exceeds the untested and *ex parte* assertions regarding Mr. Wendt.

### VI. Courts Have Released Individuals in "Heavy" Cases Based Upon the Length of Detention.

Courts have released individuals in "heavy" cases based on due process analyses. *See, e.g., United States v. Gatto,* 750 F. Supp. 664 (D.N.J. 1990) ("The court stands by its earlier findings that the defendants are dangerous. This determination, however, does not end the inquiry. *Despite defendants' dangerousness, the issue which must be resolved is whether the due process clause requires bail be set for these defendants at this time.*") (emphasis supplied). Were it otherwise, the due process constraint would have absolutely no meaning and the standard for pretrial detention and the limit on that detention would merge.

Other courts have come to similar conclusions. *See, e.g., United States v. Ojeda Rios*, 846 F.2d 167, 169 (2d Cir. 1988) (reversing district court order of detention for defendant with alleged past pattern of violent acts and a pretrial detention lasting 32 months); *United States v. Briggs*, 697 F.3d 98, 101 (2d Cir. 2012) ("The longer the detention, and the larger the prosecution's part in prolonging it, the stronger the evidence justifying detention must be if it is to justify the detention's continuance."); *United States v. Gonzales Claudio*, 806 F.2d 334, 342-343 (2d Cir. 1986) ("[A]t some point the length of confinement would exceed constitutional limits regardless of the circumstances."). The

Ninth Circuit's decision in *Torres*, and fundamental principles of fairness and Due Process require the release of Mr. Wendt now.

### VII. This Court Cannot Rely on Secret Evidence to Continue to Detain Mr. Wendt.

Mr. Wendt reiterates his previously filed objection to the secret evidence proffered to support detention – a proffer which, in this case, aggravates the Due Process, Effective Assistance, and Equal Protection issues articulated in Mr. Wendt's Motion for Release. *See* Dkt.1673. Mr. Wendt submits that this issue – consideration of secret evidence to detain – has been addressed and squarely rejected as a legitimate basis to deprive an individual of liberty. *United States v. Abuhamra*, 389 F.3d 309, 328-329 (2d Cir. 2004).

### VIII. Release Conditions Must be the Least Restrictive Conditions That Will Reasonably Assure It.

Finally, the conditions established by Judge Corley are the most stringent available: 24-hour lockdown at home, electronic monitoring, restricted access to devices, a full warrantless search condition, and no contact with any potential witness or Hells Angels members. These conditions are more than sufficient to "reasonably assure" the safety of the community. 18 U.S.C. § 3142(e). The law is well established that "[p]retrial release should be denied only in rare circumstances, and any doubt about the propriety of release should be resolved in the defendant's favor." *Motamedi*, 767 F.2d at 1405.

/ / /

/ / /

### IX. This Court Should Consider the Fact that Mr. Wendt Complied Fully on Pre-Trial Release During the *Laughlin* Case.

During the *Laughlin* case, the District Court ordered Mr. Wendt released for approximately one year (until the case was dismissed in February 2007). *See United States v. Acosta*, 03CR542 at Dkt. 1079 and Dkt. 1086. Mr. Wendt remained on release without a single incident reflecting his willingness and ability to abide by the conditions of this Court.

### CONCLUSION

Even if this Court were to find that a twenty-year old conviction and past proximity to firearms raised concerns, this Court should follow the lead of Judge Brazil and Judge Corley and release Mr. Wendt pursuant to stringent conditions including custodianship, electronic monitoring, and home detention. This Court should do so not only because he does not pose a danger to the community, but also because Due Process and the Presumption of Innocence demand that, after nearly four years inside of the Santa Rita Jail, an accused should be released from custody where, as Judge Brazil put it, "an appreciable period of the delay is attributable to the government."

Moreover, following the lead of Judge Weinstein, Effective Assistance demands that this Court release Mr. Wendt to allow him a meaningful opportunity to assist his counsel in the few but critical months that remain before trial. Mr. Wendt, alone among his co-defendants, has been alienated from the Court, from discovery, and from his reconfigured legal team which, while no matter how active, cannot fulfill its Sixth Amendment function without the assistance and participation of the accused. Mr. Wendt

BRIAN WENDT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO GOVERNMENT'S APEAL OF JUDGE CORLEY'S RELEASE ORDER, AS REQUESTED BY THE COURT AT MAY 7, 2021 HEARING
14

respectfully urges this Court to lift the stay and uphold the release order issued by Magistrate Judge Corley and release him to his parents' home.

Dated: May 14, 2021                                    Respectfully Submitted,

JOHN T. PHILIPSBORN
MARTIN ANTONIO SABELLI
K. ALEXANDRA McCLURE

 */s/ John T. Philipsborn*
JOHN T. PHIIPSBORN
Attorneys for Brian Wayne Wendt

 */s/ Martín A. Sabelli*
MARTIN ANTONIO SABELLI
Attorney for Brian Wayne Wendt

 */s/ K. Alexandra McClure*
K. ALEXANDRA McCLURE
Attorney for Brian Wayne Wendt