JOHN T. PHILIPSBORN - SBN 83944
Law Offices of JOHN T. PHILIPSBORN
507 Polk Street, Suite 350
San Francisco, CA 94102
(415) 771-3801
jphilipsbo@aol.com

K. ALEXANDRA McCLURE - SBN 189679
Law Office of ALEXANDRA McCLURE
214 Duboce Ave.
San Francisco, CA 94103-1008
(415) 814-3397
alex@alexmcclurelaw.com

Attorneys for BRIAN WAYNE WENDT

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JONATHAN JOSEPH NELSON, et al.,<br><br>Defendants. | **Case No. CR-17-00533-EMC**<br><br>**BRIAN WENDT'S OPPOSITION TO THE UNITED STATES' THIRD AMENDED APPLICATION FOR PRELIMINARY ORDER OF FORFEITURE**<br><br>**Date: August 21, 2024, 9:00 am**<br><br>**Court: The Honorable Edward M. Chen, Senior United States District Judge** |

# INTRODUCTION

Undersigned counsel for Brian Wendt hereby submit this response and opposition to the United States' request for a preliminary of forfeiture for select items of personal property, namely, his Fresno Hells Angels vest, patches and belt. While the parties resolved the issue of the return of nearly all of Mr. Wendt's personal and other Hells Angels related belongings, the vest, patches and belt remain in dispute. As Mr. Wendt made clear in his sentencing memorandum, he does not contest the forfeiture of any guns, ammunition or other items of alleged contraband seized from his home, storage unit and the Fresno Hells Angels Clubhouse. He notes, however, that there will be valid third party claims to some of these items as it is believed that numerous of the weapons seized were in fact legally owned by others.

On behalf of Mr. Wendt, we respectfully submit that the United States' attempt to secure Mr. Wendt's personal items of clothing, lawfully purchased and worn as a member of the Fresno charter of the Hells Angels, should be denied. The items should be returned to him or his representative family member, given his current incarceration. Some of the patches and insignias on the clothing worn by Mr. Wendt are 'collective membership marks' of the type explained in case law cited below and are not subject to forfeiture. There is no continued legal basis for the attempt to seek the permanent transfer of these items to the United States.

# BACKGROUND

**A. Procedural History.**

By way of brief background, in the Indictments in this case, the government sought forfeiture under the RICO forfeiture statute, 18 U.S.C. §1963(a)(3), 924(d), and the general civil forfeiture statue, 18 U.S.C. §981(a)(1)(C), which 28 U.S.C. §2461(c) applies to criminal cases.

On May 27, 2022, during the Group One trial, the United States filed its "Amended Bill of Particulars for Forfeiture of Property." *See* Dkt. 2787. Then on June 11, 2024, right before sentencing, the United States filed an "Amended Bill of Particulars for Forfeiture of

Property of Brian Wendt." *See* Dkt. 3740. And on June 12, 2024, the United States filed an Application for Preliminary Order of Forfeiture." *See* Dkt. 3743.

On July 2, 2024, the United States filed another pleading related to forfeiture of property belonging to Brian Wendt, entitled: "Third Amended Application for Preliminary Order of Forfeiture of Property from Joseph Nelson, Russell Ott and Brian Wendt." *See* Dkt. 3751. This third pleading, for the first time in the over six and a half years this case has been pending, adds a new item to be forfeited: a belt and belt buckle with a Hells Angels logo on it. *See* Dkt. 3751 at p. 13 ("One black belt with "Soldier" on back, knife attached to the belt, and Hells Angels belt buckle with Brian Wendt's name.").

In the Third Amended Application, and pursuant to the agreement of the parties, the United States has narrowed the items the government seeks to forfeit in this case. The request still includes numerous firearms and ammunition, some of which were found in the home where Mr. Wendt was staying at the time, owned by a friend, Steve Meza and possibly other members of the Fresno charter who also were not charged with any crimes. The Wendt defense understands that many of the items seized from this home belong to Mr. Meza. Numerous items seized from the Fresno clubhouse also belonged to third parties. Thus, many of the items sought to be forfeited will be the subject of mandatory ancillary proceedings related to these third party interests after the forfeiture proceedings have concluded as to Mssrs. Nelson, Ott and Wendt. *See* Rule 32.2(c)(1). Mr. Wendt is not personally contesting forfeiture as to those items.

A second category of items sought to be forfeited by the government in this matter as to Mr. Wendt, includes his vest, patches and the new item that has been specified, a belt with attached belt buckle and knife. *See* Dkt. 3751, p.13. These items were lawfully possessed by Mr. Wendt and had nothing to do with the charged enterprise, HASC. To the extent that some of the Hells Angels insignias on Mr. Wendt's personal clothing are 'collective membership marks', or otherwise protected categories of insignias, they are not subject to forfeiture in the current proceedings for reasons discussed more fully below.

The government cannot demonstrate that any of these personal items were acquired

as a result of any charged criminal conduct in this case, nor were the proceeds of illegal activity relating to the charged enterprise, nor were they a "source of influence" over the charged enterprise, HASC.

## ARGUMENT

### A. Brian Wendt Has a Continued Interest and Right to the Return of His Personal Belongings Despite his Conviction in This Case.

As stated at the outset of this memorandum, the parties have reached an agreement regarding the return of most of Mr. Wendt's personal belongings including jewelry and other personal belongings, including numerous items bearing the Hells Angels logo, symbols and insignia. The forfeiture discussion in this memorandum is directed toward the remaining items, namely, one leather vest, a belt, and numerous "patches" as described and shown by photographs in the United States' most recent pleading related to forfeiture. *See* Dkt. 3751.

While it is true that once Mr. Wendt was convicted, "any property constituting, or derived from, any proceeds which [Mr. Wendt] obtained, directly or indirectly," *from the HASC* was subject to forfeiture in accordance with § 1963(a), there can be no such finding with respect to Fresno-related property interests, including Mr. Wendt's vest, patches and belt. There has been no proof at trial nor in the United States' most recent forfeiture pleading that any of these items were purchased with funds from HASC racketeering activities or acquired from members of the HASC or on behalf of the HASC. Mr. Wendt was a longstanding Fresno member and had a right to possess Fresno Hells Angels clothing and jewelry. It was legal then to purchase and wear Hells Angels logos and clothing as is evidenced by the thousands of people all over the world who do so today. These personal belongings and clothing have value, including sentimental value, and should be returned. Mr. Wendt's family is prepared to retrieve these items from the FBI, just as they coordinated with the government and FBI when they received Mr. Wendt's motorcycle.

//
//

**B. The Hells Angels Logos, Insignia and Symbols are Afforded Federal Legal Protection.**

As an initial matter, it is important to emphasize that the Hells Angels and its members display specific words and images on leather vests, flags, bandanas, belt buckles, and other items of personal property, some of which are contained on "patches" that are collected by members and affixed to clothing such as vests and belts. Some of these words and images are registered with the United States Patent and Trademark Office as a type of trademark called a "collective membership mark." These trademarks are used by members of the Hells Angels so that they can be identified as members of the Hells Angels International Motorcycle Club. *See United States v. Nation,* 370 F. Supp. 3d 1090 (C.D. Cal. 2019) (discussion of U.S. Trademark rights of Mongols Motorcycle club collective trademarks and finding that forced transfer to the United States of collective marks violates the First and Eighth Amendments) (affirmed on other grounds). And the Hells Angels have pursued the rights to their collective trademarks. As the district court pointed out in *Nation, supra*, the Hells Angels in 2012 sued Toys R' Us for selling yo-yos with a design confusingly similar to the club's "Death Head" collective membership trademark. *Id.* at 1096.[1]

The Central District's ruling in *Nation* is discussed in the Ninth Circuit's subsequent ruling in *United States v. Mongol Nation*, 56 F. 4th 1244, 1247-8, n. 3 (9th Cir. 2023). There, the court explained that there have been instances in which registered collective membership marks were, because of the facts presented, not subject to forfeiture under RICO. Particularly where the marks remain under the ownership of the club, or a chapter of the club, the marks (and thus clothing with the marks on them) are not subject to

---

[1] *Hells Angels Motorcycle Corporation v. Yomega Corporation et al*, Case No. 2:12-cv-02541-MCE-AC (E.D. Cal. Oct. 10. 2012).

forfeiture.[2]

There can be no question here that the Hells Angels logo and symbols are legally used by thousands of people all over the world, including members of the Fresno chapter like Brian Wendt. His convictions in this case do not change this indisputable fact. Further, there was no allegation in the indictment or finding by the jury that would provide a basis for the court to enter a forfeiture order of these items based on the theory that the clothing with Hells Angels marks or patches on it bore a nexus to the criminal enterprise that was the subject of the indictment.

The United States cites no authority in its pleading for the forfeiture of registered trademarks or items bearing those collective marks. In fact, it is unclear what legal basis the United States proffers for the forfeitability of these items that indisputably contain registered trademarks.[3] The government's argument is unclear, but to the extent the United States is arguing that the Hells Angels logo and marks are no longer lawful to possess or display, that is of course incorrect. *See e.g., Nation, supra,* ("Though the symbol may at times function as a mouthpiece for unlawful or violent behavior, this is not sufficient to strip speech of its First Amendment protection" Citing *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 253, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2003) ("The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it. . . . First Amendment freedoms are most in danger when the government seeks to control thought or to justify its laws for that impermissible end.")).[4]

---

[2] In this case, the government is well aware of individual members of the Hells Angels signing documents acknowledging that the marks are property returnable to the club since the government acquired such documentation during the searches in this case.

[3] There is a distinction between seeking forfeiture of the trademarks themselves and items bearing those trademarks. Here, for purposes of Mr. Wendt and his individual interests, it is worth noting that he has First Amendment rights of expression and the logos on the items sought to be seized contain lawful, registered trademarks. The club itself and/or the Fresno Charter may at a future date seek the return of these items on First Amendment grounds. If these belongings are not returned to Mr. Wendt, they will be the subject of legal proceedings involving third parties.

[4] Mr. Wendt acknowledges that if he were released on Supervised Release, this Court would have the discretion to

6
BRIAN WENDT'S OPPOSITION TO THE UNITED STATES'
THIRD AMENDED REQUEST FOR CRIMINAL FORFEITURE

### C. **Mr. Wendt's Vest, Patches and Belt Were Not a "Source of Influence over the Enterprise".**

Although not analyzed or supported by any case law, the United States appears to be relying on the RICO forfeiture statute's language regarding an alleged "source of influence" over HASC, the charged racketeering enterprise. 18 U.S.C. §1963. No theory has been articulated as to how or why the United States believes it can demonstrate that Brian Wendt's personal clothing or patches were a "source of influence"[5] over HASC.

The United States' argument is without merit.[6] First, Mr. Wendt was not and never has been a member of the HASC. He did not particulate, or even know about, the vast majority of the acts allegedly committed by members of the charged members of the HASC. The only connection proven at trial was the Silva homicide. There has been no evidence whatsoever that Brian Wendt's vest, patches or belt played any role in that crime (or any other crime proven at trial). There was no evidence that Brian Wendt was even there during the homicide, let alone descriptions from witnesses of what he was wearing at the time. The Court is well aware of the paucity of direct evidence of Mr. Wendt's

---

restrict some of Mr. Wendt's First Amendment freedoms of expression. Here, there can be no claim that he will be wearing the seized items as he is serving a lengthy prison sentence. The question of lawful ownership is distinct from whether Mr. Wendt could face reasonable restrictions on his temporary rights to display the symbols at issue.

[5] In the United States' Third Amended Forfeiture request, the following statute is excerpted (emphasis in original): "Pursuant to 18 U.S.C. § 1963, "Whoever violates any provision of section 1962 . . . *shall* forfeit to the United States . . ."
    (1) "any interest the person has acquired or maintained in violation of 18 U.S.C. § 1962"
    (2) "any interest in; security of; claim against; *or* **property** or contractual right **of any kind affording a source of influence over;** any enterprise the person has established**, operated, controlled, conducted, or participated in the conduct of**, in violation of section 1962"; and
    (3) "any property constituting, or derived from, any proceeds which the person obtained directly or indirectly, from racketeering activity . . . in violation of section 1962."
    *Id.* (emphasis added).

[6] It is difficult to respond to the government's arguments because the United States' Third Amended Forfeiture pleading contains no case authority or pertinent legal analysis. The application should be denied for this reason alone. At a minimum, Mr. Wendt reserves his right to file a reply brief after the United States responds to this opposition brief. It is not proper to reserve new arguments for the reply as the United States appears to intend to do here.

involvement and it will not be belabored here, but even accepting the United States' evidence as true, which we must for purposes of these ancillary proceedings, there is no evidence that Brian Wendt's personal Hells Angels clothing or items had any influence over the others in this case or over Joel Silva. The United States' argument amounts to an allegation that the Hells Angels motorcycle club is itself is a criminal organization. The Hells Angels international organization is a separate and distinct entity from the charged criminal enterprise, as is the Fresno charter of the Hells Angels. The "enterprise" is the defendants charged in the case, and the charged enterprise HASC, not the international motorcycle club itself.

In sum, the United States offers no case law or authority to support the idea that an individual member must forfeit his clothing or personal items that were owned and used long before the criminal charges in the case. Moreover, there has been no showing that Brian Wendt's personal items – his vest, patches, and belt – were a "source of influence" over the charged enterprise within the meaning of the statute. The United States cites no authority to aid the Court in its interpretation of this vague statutory language. To the extent there is ambiguity, that conflict should of course be resolved in Mr. Wendt's favor. *See Taylor v. United States,* 495 U.S. 575, 594-98, 109 L. Ed. 2d 607, 110 S. Ct. 2143 (1990). As with all criminal statutes, the rule of lenity requires the Court to construe ambiguous terms in favor of the criminal defendant. *Id.* at 596. "This maxim of statutory construction, however, cannot dictate an implausible interpretation of a statute, nor one at odds with the generally accepted contemporary meaning of a term." *Id.* (citing *Perrin v. United States*, 444 U.S. 37, 49 n.13, 62 L. Ed. 2d 199, 100 S. Ct. 311 (1979)). Without any evidence that Mr. Wendt's belt, vest or patches "influenced" the HASC or Joel Silva, the government's argument fails. Mr. Wendt's remaining personal Fresno Hells Angels items should be ordered returned to his family or other legal representative.

## CONCLUSION

For the foregoing reasons, Mr. Wendt respectfully urges this Court to deny the United States' request for a preliminary order of forfeiture as to his Hells Angels vest,

patches and belt. Mr. Wendt reiterates that he does not contest the forfeiture of the weapons and ammunition specified in the United States Third Amended Application for Preliminary Order of Forfeiture. Most, if not all, of those items will be the subject of third party claims.

Dated:  July 16, 2024.                    Respectfully Submitted,

JOHN T. PHILIPSBORN
K. ALEXANDRA McCLURE

*/s/ K. Alexandra McClure*
K. ALEXANDRA McCLURE

*/s/ John T. Philipsborn*
JOHN T. PHILIPSBORN

*Attorneys for Brian Wayne Wendt*